FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSHUA A., a minor, by and
through Jorge A., his guardian ad
litem,

*Plaintiff-Appellant,*

v.

ROCKLIN UNIFIED SCHOOL DISTRICT,
*Defendant-Appellee.*

No. 08-15845

D.C. No.
2:07-CV-01057-
LEW-KJM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Ronald S.W. Lew, District Judge, Presiding

Argued and Submitted
November 17, 2008—San Francisco, California

Filed March 19, 2009

Before: John T. Noonan, Andrew J. Kleinfeld
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Noonan

## COUNSEL

Bob N. Varma, El Dorado Hills, California, for the plaintiff-appellant.

Marcella L. Gutierrez, Sacramento, California, for the defendant-appellee.

## OPINION

NOONAN, Circuit Judge:

This appeal is focused on the financial aspect of a federal program designed to accommodate the special educational needs of a child with disabilities. It pits the parents of the child, understandably anxious to secure the child's effective education, against a school district conscious of its educational mission and of its limited funds. The solution to this conflict is found in what Congress has prescribed.

Joshua A., a child affected by autism, contended that Rocklin Unified School District ("the District") failed to provide him for the year 2006-2007 with a Free and Appropriate Public Education in accordance with 26 U.S.C. § 1412(a)(1)(A). In a separate memorandum disposition, filed together with this opinion, we have affirmed the judgment of the district court's denial of Joshua's appeal. Here, we address only Joshua's motion for stay put seeking reimbursement for educational costs incurred during the pendency of this appeal.

## PROCEEDINGS

Less than one month after filing this appeal, Joshua filed a motion for stay put under § 1415(j) of the IDEA, requesting that the District continue to co-fund his in-home intervention program through the appeals process. The statute requires the state to maintain the child's "current educational placement" during the course of "any proceedings conducted pursuant to this section." 20 U.S.C. § 1415(j); *L.M. ex rel. Sam M. v. Capistrano Unified Sch. Dist.*, 538 F.3d 1261, 1270 (9th Cir. 2008). The phrase "current educational placement" includes "the placement described in the child's most recently implemented IEP [or Individualized Education Plan]" *Id.* For Joshua, the most recently implemented IEP required the District to co-fund forty hours a week of in-home educational services administered by Therapeutic Pathways ("Pathways"), a nonpublic agency.

The motions panel referred the stay put motion to this Court to decide along with the merits of the case.

## ANALYSIS

Section 1415(j), the stay put provision, reads:

during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the

child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed. 20 U.S.C. § 1415.

**[1]** A motion for stay put functions as an "automatic" preliminary injunction, meaning that the moving party need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief. *Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 79 F.3d 859, 864 (3d Cir. 1996). The District's primary challenge to the motion, then, is that the provision is inapplicable to "proceedings" pending before circuit courts of appeals. For the reasons discussed below, we disagree.

1.   *The plain text of the statute:*

**[2]** Section 1415(j) requires the school district to keep children in their current educational placement "during the pendency of any proceedings conducted pursuant to this section." Four kinds of proceedings are mentioned in § 1415: (1) mediation; (2) due process hearings; (3) state administrative review; and (4) "a civil action" begun by a complaint under the IDEA, "which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." 20 U.S.C. § 1415(e), (f), (g), (i). The District argues that the plain language of the stay put provision excludes Joshua's appeal to the circuit court.

**[3]** This is an unnecessarily narrow reading of § 1415(j). Civil actions under the IDEA may be brought in federal district courts. 20 U.S.C. § 1415(i)(2)(A). Circuit courts have jurisdiction to hear appeals from final judgments of district courts pursuant to 28 U.S.C. § 1291. By giving Joshua the right to appeal the ALJ's decision to the district court, § 1415

also made it possible for Joshua to appeal the dispute to this circuit court. We presume that Congress was aware of this fact when it enacted § 1415(j). We therefore reject the District's position that the plain language of the stay put provision excludes appeals from final judgments of the district courts from civil actions. The Department of Education, in implementing § 1415(j), reaches the same result, requiring maintenance of a child's educational placement "during the pendency of *any* . . . judicial proceeding." *See* 34 C.F.R. § 300.518(a) (2006) (emphasis added).

It is argued that the statute does not unambiguously compel this result. "If a statute's language can reasonably be construed in more than one way, a court may not substitute its own construction of the statute for a reasonable interpretation made by the agency that Congress has entrusted to implement the legislation." *Ariz. Health Care Cost Containment Sys. v. McClellan*, 508 F.3d 1243, 1253 (9th Cir. 2007) (citations omitted). Because the Department of Education's reasonable interpretation of the statute conforms with ours, *see* 34 C.F.R. § 300.518(a), we need not resolve whether the statute is ambiguous at this time.

2.  *Case Law:*

**[4]** No Ninth Circuit cases address the issue. The only published circuit court decision addressing the issue is a nineteen-year-old opinion from the D.C. Circuit. *See Andersen ex rel. Andersen v. District of Columbia*, 877 F.2d 1018, 1023-24 (D.C. Cir. 1989). The *Andersen* court denied the plaintiff's motion for stay put during the pendency of the appeal, concluding that "[o]nce a district court has rendered its decision approving a change in placement, that change is no longer the consequence of a unilateral decision by school authorities; the issuance of an automatic injunction perpetuating the prior placement [through the appeals process] would not serve the section's purpose." *Id.* at 1024.

*Andersen* relies on a tangential policy argument in *Honig v. Doe*, 484 U.S. 305 (1988). However, the holding in *Honig* is inapposite to the present case. In *Honig*, the Supreme Court was asked by a school district to read a "dangerousness" or exigency exception into the stay put provision, allowing schools to suspend or exclude disabled students that pose a danger to their peers. 484 U.S. at 323. The Court rejected the school district's contention, holding that in order to change a disabled student's placement (beyond a ten-day suspension) schools must seek the help of the courts through the procedures of the IDEA. *Id.* at 326. In order to bolster its argument that the stay put provision would not prevent the courts from suspending a child under exigent circumstances, the Court stated that the provision was intended to prevent "the unilateral exclusion of disabled children by *schools*, not courts." *Id.* at 327 (emphasis in original). Ultimately, the Court held that a court can change a child's placement notwithstanding the stay put provision only upon a showing "that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others." *Id.* at 328.

*Andersen* was too quick to take language from *Honig* outside of the limited context of the exigency argument before the Supreme Court. The present case — as with most cases where the stay put provision applies — does not involve exigency, nor does it involve a child who shows a likelihood of causing harm to himself or to others. The school district in the present case was not asked to meet the stringent and specific legal threshold which *Honig* required schools to meet in order to overcome the application of the stay put provision. Under these circumstances, *Honig* is inapplicable, and *Andersen*'s reliance on the policy language from that case is unpersuasive.[1]

---

[1]It is also worth noting that *Honig* was at least partially superceded by statute. *See* 20 U.S.C. § 1415(k)(1)(G); H.R. Rep. No. 105-95, at 108-09 (1997). In its 1997 amendment and reauthorization of the IDEA, Congress added what the house report refers to as "two exceptions to the pendency

**[5]** No published circuit court opinions have followed the holding in *Andersen*. Several recent district and state courts have explicitly rejected its rationale, however. *See N. Kitsap Sch. Dist. v. K.W. ex rel. C.W.*, 123 P.3d 469, 482-83 (Wash. Ct. App. 2005) ("the holding in *Andersen* does not follow the general policy behind IDEA, which is to keep from disturbing the child throughout the statutory process designed to resolve disputes between the school district and the child's parents or guardians over where the child can receive the appropriate educational opportunities"); *Ringwood Bd. of Educ. v. K.H.J. ex rel. K.F.J.*, 469 F. Supp. 2d 267, 270-71 (D.N.J. 2006) (rejecting *Andersen* and concluding that Third Circuit cases require the stay put provision to apply during the appeals process). Additionally, *Andersen*'s holding is inconsistent with the Department of Education's recent regulations implementing § 1415(j), which require maintenance of the child's placements "during the pendency of any . . . judicial proceeding." 34 C.F.R. § 300.518(a).

For these reasons, the District's reliance on *Andersen* does little to bolster its position that the stay put provision is inapplicable here.

3.  *Structural and policy considerations:*

The District argues that like other preliminary injunctions, a stay put order should expire upon the issuance of a final

provision." H.R. Rep. No. 105-95, at 108. The first exception is now codified in § 1415(k)(1)(G) of the Act, entitled "Special circumstances," which permits school personnel to change the placement of students carrying or possessing weapons; knowingly possessing, using or selling controlled substances; or causing serious bodily injury to others, for up to forty-five school days "without regard to whether the behavior is determined to be a manifestation of the child's disabilities." § 1415(k)(1)(G). Under the new amendment, school districts are no longer required, as they were under *Honig*, to first appeal such changes to the courts. *Cf.* 484 U.S. at 323-28.

judgment. By this account, the district court's judgment in favor of the District ended the District's obligations by terminating the application (and the applicability) of § 1415(j).

**[6]** But the "automatic" nature of a stay put order cuts against the District's position. The fact that the stay put provision requires no specific showing on the part of the moving party, and no balancing of equities by the court, evidences Congress's sense that there is a heightened risk of irreparable harm inherent in the premature removal of a disabled child to a potentially inappropriate educational setting. In light of this risk, the stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process. It is unlikely that Congress intended this protective measure to end suddenly and arbitrarily before the dispute is fully resolved.

**[7]** Ultimately, refusing to enforce the stay put provision during the appeals process would force parents to choose between leaving their children in an education setting which potentially fails to meet minimum legal standards, and placing the child in private school at their own cost. Congress sought to eliminate this dilemma through its enactment of § 1415(j). *See Susquenita Sch. Dist. v. Raelee S. ex rel. Heidi S.*, 96 F.3d 78, 87 (3d Cir. 1996) ("Without interim financial support [provided through a motion for stay put], a parent's 'choice' to have his child remain in what the state has determined to be an appropriate . . . placement amounts to no choice at all."). Allowing the District to terminate the child's placement during the appeals process, while the District continues to receive federal education funding, runs counter to the purpose of § 1415(j).

The case is REMANDED to the district court to determine what the school district owes Joshua for the cost of his education during the pendency of his appeal.