**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MERIDIAN JOINT SCHOOL DISTRICT NO. 2, <br> *Plaintiff-Appellant*, <br><br> v. <br><br> D. A., mother of minor, M.A. and J. A., father of minor, M.A., <br> *Defendants-Appellees*. | No. 13-35329 <br><br> D.C. No. 1:11-cv-00320-CWD |
| MERIDIAN JOINT SCHOOL DISTRICT NO. 2, <br> *Plaintiff-Appellant*, <br><br> v. <br><br> D. A., mother of minor, M.A. and J. A., father of minor, M.A., <br> *Defendants-Appellees*. | No. 13-36200 <br><br> D.C. No. 1:11-cv-00320-CWD <br><br> OPINION |

Appeal from the United States District Court
for the District of Idaho
Candy W. Dale, Chief Magistrate Judge, Presiding

Argued and Submitted
April 8, 2015—Seattle, Washington

Filed July 6, 2015

Before: Ferdinand F. Fernandez, Michael Daly Hawkins,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

## SUMMARY*

**Individuals with Disabilities Education Act**

The panel affirmed in part and reversed in part the district court's judgment and vacated an injunction in an action under the Individuals with Disabilities Education Act.

The parties disagreed as to whether a student was entitled to special education services under the IDEA. Affirming in part, the panel held that the district court did not err in affirming a hearings officer's determination that the student was entitled to an Independent Educational Evaluation at public expense.

Reversing in part, the panel held that although the student's parents' request for attorneys' fees was timely and they were prevailing parties, they were not eligible for an award of fees under 20 U.S.C. § 1415(i)(3)(B) because neither was a "parent of a child with a disability." Agreeing with the Eleventh Circuit, and disagreeing with the Sixth and Seventh Circuits, the panel concluded that for purposes of

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

choosing the most relevant state statute of limitations, a request for attorney's fees is more analogous to an independent claim than an ancillary proceeding. Agreeing with the Fifth Circuit, the panel held that the parents were not parents of a child with a disability for purposes of an award of attorneys' fees under § 1415(i)(3)(B) because their child had not been determined to need special education services.

The panel vacated the district court's "stay-put" injunction against the student's graduation from high school.

## COUNSEL

Elaine F. Eberharter-Maki (argued) and Merritt L. Dublin, Ebertharter-Maki & Tappen, P.A., Boise, Idaho, for Plaintiff-Appellant.

Frank Z. LaForge (argued), Holland & Hart LLP, Reno, Nevada, for Defendants-Appellees.

## OPINION

CALLAHAN, Circuit Judge:

M.A. or Matthew has Asperger's Syndrome, a high functioning form of autism.[1] For many years, his parents and the Meridian School District (MSD) have disagreed as to whether Matthew was entitled to special education services under the Individuals with Disabilities Education Act (IDEA),

---

[1] Matthew is now an adult, but during most of the underlying legal proceedings he was a minor and was referred to as M.A.

20 U.S.C. § 1400. The appeals before us were filed by MSD and challenge the district court's (1) determination that Matthew was entitled to the preparation of an Independent Educational Evaluation (IEE) at public expense; (2) award of attorneys' fees to Matthew's parents; and (3) injunction against Matthew's graduation from high school. We affirm in part and reverse in part. We find no error in the district court's affirmance of the hearing officer's determination that Matthew was entitled to an IEE at public expense. However, we conclude that although the parents' request for attorneys' fees was timely, and that they are "prevailing parties," they are not eligible for an award of attorneys' fees under 20 U.S.C. § 1415(i)(3)(B). Finally, we vacate the injunction against Matthew's graduation.

## I

Matthew was born in 1994. In 2004, he moved from California to Idaho. Matthew had received special education in California, and his parents provided MSD "with information related to M.A.'s previous diagnoses of expressive-receptive language disorder, central auditory processing disorder, possibility of dyslexia and dysgraphia, and possibility of Asperger's disorder." Matthew received special education under the IDEA from fifth grade through eighth grade. In April 2008, while Matthew was in eighth grade, Matthew's Individualized Education Program (IEP) team determined, following a three-year reevaluation of Matthew, that he no longer needed special education services. His parents (sometimes referred to as the Parents) disagreed with this decision and, at their own expense, obtained an evaluation from Dr. Timothy Leavell, who diagnosed Matthew with Asperger's disorder. The Parents asked MSD to conduct an evaluation of Matthew and reassess his

eligibility for special education. MSD, however, concluded that, rather than an IEP under the IDEA, Matthew would receive various accommodations starting in ninth grade under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Matthew's freshman year was spent at Centennial High School until April 2009 when Matthew set a fire in a room in the family home, was arrested, and placed in the Ada County Juvenile Detention Center (ACJDC). While Matthew was in the ACJDC, his parents requested that the Boise School District (BSD), which had responsibility for the ACJDC, evaluate Matthew's eligibility for special education services. On February 18, 2010, BSD issued an eligibility report finding strong indications of Asperger's Syndrome, but concluding that Matthew was not eligible for special education services because "at this time, there is no evidence of the adverse effect of [his] disabilities on his current educational performance." However, the report noted that the evaluation was limited by the fact that the assessments were conducted while Matthew was confined. The report stated:

> In the event [Matthew] is released from the ACJDC and placed at another facility, or returns home to the Meridian School District, [Matthew's parents] may wish to request an evaluation to determine whether his disabilities adversely affect his educational performance, and whether he needs specially designed instruction in order to access and progress in the general education curriculum.

Matthew was released from the ACJDC in September 2010, and returned to Centennial High School, several weeks after the school year had started. Three days before he

returned to the high school, his parents delivered a letter to MSD requesting a comprehensive IEP for Matthew. MSD considered the request, drafted a new Section 504 plan for Matthew, and on September 27, 2010, denied the Parents' requests for additional assessments. MSD stated that it was relying on the February 2010 report prepared by BSD and that the IDEA provides that reevaluation may not occur more than once a year.

Matthew's mother indicated that she disagreed with MSD and sought a team meeting. Meetings were held in October and November, and on November 22, 2010, but MSD declined to perform an additional assessment of Matthew. MSD's notice discussed Matthew's Section 504 plan and concluded that Matthew did "not need specially designed instruction at this time and therefore does not qualify for an IEP."

In January 2011, Matthew's mother sent MSD a letter disagreeing with its conclusion and requesting an IEE. She asserted that the prior evaluations "were conducted in an extremely structured and regimented environment, the evaluations are not comprehensive, and do not adequately assess [Matthew's] unique needs."

MSD denied the request for an IEE and pro-actively filed for a due process hearing pursuant to 20 U.S.C. § 1415 and 34 C. F. R. § 300.502(b)(2)(i), seeking confirmation of its decision from a hearing officer. The matter was assigned to Special Education Hearing Officer Guy Price (HO Price), who conducted three weeks of hearings on two issues: (1) "[i]s the Student entitled to an Independent Educational Evaluation, as requested by his attorney on January 17, 2011"; and (2) "[d]oes the Student qualify for special

education pursuant to the eligibility criteria set forth in the IDEA and the Idaho Special Education Manual."

In a June 6, 2011 decision, HO Price found that MSD had failed to conduct an appropriate evaluation, held that Matthew was entitled to an IEE at public expense, and declined to rule on whether he qualified for special education services, stating that such a determination would be premature prior to the completion of an appropriate evaluation.[2]

In July 2011, MSD filed an action in the District Court of Idaho seeking judicial review of HO Price's decision. On May 23, 2012, the district court issued an order granting the Parents' motion to enjoin Matthew's graduation from high school. In March 2013, the district court issued an order affirming HO Price's decision and dismissing MSD's appeal. On April 17, 2013, MSD filed a timely notice of appeal (Appeal No. 13-35329). Thereafter, the district court conducted further proceedings on the Parents' request for attorneys' fees. On October 16, 2013, the district court entered an order granting the Parents attorneys' fees. The final judgment was entered on November 25, 2013, and MSD filed a timely notice of appeal from the award of attorneys' fees on December 20, 2013 (Appeal No. 13-36200).

Meanwhile, pursuant to HO Price's directive, an IEE was prepared for Matthew and submitted to MSD in September 2011. MSD proceeded to evaluate Matthew's eligibility for special education services under the IDEA. In January 2012, the Parents filed a request for a due process hearing alleging

---

[2] On June 15, 2010, HO Price issued an addendum to his June 6, 2011 decision.

that MSD had not timely evaluated Matthew. In February 2012, MSD determined that Matthew was not eligible for special education. The Parents then filed a second due process complaint challenging that ruling. The two due process complaints were consolidated into a single case and were heard by Hearing Officer Litteneker (HO Litteneker). HO Litteneker conducted ten days of hearings over two months before issuing a decision on July 5, 2012, holding that Matthew was not entitled to special education services under the IDEA. The Parents then filed a complaint with the district court seeking review of HO Litteneker's decision. On January 6, 2014, the district court issued a memorandum decision and order affirming HO Litteneker's decision that Matthew was not entitled to special education services. The Parents filed an appeal from that decision.[3]

In addition, the Parents filed another action arising from the same background that is not before us. In February 2011, the Parents initiated administrative proceedings under the Rehabilitation Act and in March 2011, initiated an action alleging that MSD and BSD had violated Matthew's rights under the Americans with Disabilities Act (ADA). *D.A. v. Meridian Joint Sch. Dist. No. 2*, 289 F.R.D. 614, 620 (D. Idaho 2013). That action was ultimately resolved in an eight-day trial in the summer of 2013. The jury answered no to the special verdict question "was Matthew denied a free and appropriate public education by the Meridian School District." Chief Magistrate Judge Candy W. Dale, who presided over all of the cases concerning Matthew, issued a

---

[3] The Parents' appeal from the district court's January 6, 2014 order, Appeal No. 14-35081, was argued in tandem with MSD's appeals. We affirm the district court's January 6, 2014 decision in a memorandum disposition filed concurrently with this opinion.

final judgment on July 31, 2013.  There was no appeal from the judgment.

## II

We review the district court's findings of fact for clear error and review its conclusions of law de novo. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987).  We review de novo the district court's determination as to whether the school district complied with the IDEA. *E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*, 758 F.3d 1162, 1170 (9th Cir. 2014) (citing *K.D. v. Dep't of Educ.*, 665 F.3d 1110, 1117 (9th Cir. 2011)); *N.B. v. Hellgate Elem. Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008).  We have explained that:

> we give "due weight to judgments of education policy when reviewing state hearings and must take care to not substitute [our] own notions of sound educational policy for those of the school authorities [we] review." *K.D.*, 665 F.3d at 1117 (internal quotation marks omitted).  Although "[t]he extent of deference given to the state hearing officer's determination is within our discretion," "[w]e give deference to the state hearing officer's findings particularly when, as here, they are thorough and careful." *Id.*; *see also Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994).

*E.M.*, 758 F.3d at 1170.  *See also K.D.*, 665 F.3d at 1117.

"We review the district court's findings of fact for clear error, even when they are based on the written record of administrative proceedings." *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 817 (9th Cir. 2007) (citing *Amanda J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001)). "A finding of fact is clearly erroneous when the evidence in the record supports the finding but 'the reviewing court is left with a definite and firm conviction that a mistake has been committed.'" *K.D.*, 665 F.3d at 1117 (quoting *Burlington N., Inc. v. Weyerhaeuser Co.*, 719 F.2d 304, 307 (9th Cir. 1983)).

In addition, we have held that "the party 'challenging the district court's ruling bears the burden of proof on appeal.'" *E.M.*, 758 F.3d at 1170 (quoting *K.D.*, 665 F.3d at 1117).

### III

We initially turn our attention to MSD's challenges to HO Price's determination that Matthew was entitled to the preparation of an IEE at public expense. Because we affirm that decision, we next address the district court's award of attorneys' fees. We first hold that despite MSD's arguments to the contrary, the Parents' request for attorneys' fees was timely. This brings us to 20 U.S.C. § 1415(i)(3)(B)(i), which grants the district court discretion to award reasonable attorneys' fees as part of costs "to a prevailing party who is the parent of a child with a disability." We conclude that while the Parents are "a prevailing party," neither is a "parent of a child with a disability" for purposes of the statute's attorneys' fees provision. Last, we address and vacate the district court's injunction barring Matthew's graduation from high school.

### A. The hearing officer and the district court properly determined the Parents were entitled to an IEE at public expense.

In his 19-page memorandum decision, HO Price carefully considered the evidence and arguments presented by MSD and the Parents.  He first rejected MSD's argument that it could rely on BSD's evaluation, noting that "it appears to be at least as probable as not that the BSD's suggestion that the setting might impact their findings was correct," and that a number of professionals had concern with evaluating a student solely within the confines of ACJDC.  Second, he found that MSD's desire to perform additional observations was likely "nothing more than an effort to put off the decision . . . ."  Third, the hearing officer held that MSD had relied too heavily on Matthew's ability to obtain good grades, and that MSD's accommodations did not address the problems Matthew had with fluency and processing speed.  HO Price expressed concern that MSD sought to use its acceptance of Matthew's diagnosis of Asperger's Syndrome to allow it to focus solely on academic achievement.  He commented that although numerous tests were given, "if one looks closely, it is easy to see that the outcomes of those tests almost all show deficits which are probably attributable to the student's disability" and that "it seems that the interpretation of those tests was predetermined to be interpreted as indicating that the student was not in need of special education."  HO Price concluded "there are indicators that [Matthew] has high intelligence and can do well in many academic arenas," but "it does not appear that he has overcome his disability to the extent that it has no adverse effect on his performance."  HO Price concluded that "[a]dditional evaluation and interpretation is necessary before such a conclusion could be reached," and because he did "not have confidence in the

eligibility report relied upon and interpreted by the district, the parent is entitled to an Independent Educational Evaluation."

The district court carefully addressed MSD's objections to the hearing officer's decision in a 26-page memorandum decision.  The district court emphasized that it was not deciding whether Matthew was entitled to special education under the IDEA or even whether he suffered an adverse impact on his educational performance as a result of his disability.  Rather:

> The only issue before the Court is whether the School District's adoption of BSD's eligibility report and refusal to conduct an evaluation at M.A.'s mother's request was appropriate. HO Price found that the School District's adoption of BSD's report was not appropriate due to the setting in which BSD's evaluation took place and because the School District improperly overemphasized M.A.'s grades in looking at whether M.A. suffered an adverse affect from his disability.  The Court finds no error with those findings.

On appeal, MSD argues that it complied with the IDEA's statutory framework and regulatory criteria and the district court failed to independently review the record.  MSD argues that the district court: (1) should have given more weight to its employees' observations of Matthew after he returned to the high school; (2) failed to appreciate that there is no relevant test that takes into account a more restrictive setting; (3) relied on the same unreliable testimony as the hearing officer; and (4) should not have accepted the hearing officer's

conclusion that MSD relied solely on Matthew's academic performance.

MSD's challenges to the determination that Matthew was entitled to an IEE at public expense do not meet its burden of proof.  One of the purposes of the IDEA is to free children and parents from total reliance on a school district's assessment of a child.  In *Honig v. Doe*, 484 U.S. 305, 311 (1988), the Supreme Court noted:

> Envisioning the IEP as the centerpiece of the statute's education delivery system for disabled children, and aware that schools had all too often denied such children appropriate educations without in any way consulting their parents, Congress repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness.

Here, MSD, in essence, argues that it was entitled to rely on BSD's evaluation, and that the district court and the hearing officer should have given more weight to its witnesses. Neither argument is persuasive.  The BSD evaluation clearly stated that a further evaluation might well be appropriate when Matthew returned to the public high school.  It is common sense that a 1,700-student public high school is a very different learning environment from a juvenile detention center.  Furthermore, here, Matthew's personal history — which MSD knew well — strongly suggested that he would need assistance with the transition.  Indeed, MSD does not specifically contend otherwise as it arranged to provide Matthew with services under Section 504.

The IDEA "establishes a basic floor of education" for children with disabilities. *Mr. I. v. Me. Sch. Admin. Dist. No. 55*, 480 F.3d 1, 10–11 (1st Cir. 2007) (quoting 20 U.S.C. § 1412(a)(1)(A)). Title 20 U.S.C. § 1401(3)(A)(i), and the implementing regulations, require that for a child with autism to receive educational services, his disability must "adversely affect[] [his] educational performance." 30 C.F.R. 300.8(c)(1)(i). The regulations further provide that states may develop standards for determining whether a disability adversely affects a child's educational performance. Idaho has done so. *See* Idaho State Dep't of Educ., Special Education Manual, available at http://www.sde.idaho.gov/site/special_edu/manual_page.htm, (hereafter Idaho Manual). The district court noted that the Idaho Manual provides that "[e]ducational performance includes both academic areas (reading, math, communications, etc.) and nonacademic areas (daily life activities, mobility, pre-vocational skills, social adaption, self-help skills, etc.)." MSD does not deny that this is the applicable standard.

We conclude that the hearing officer, as well as the district court, carefully and thoroughly reviewed all the evidence and we also find that the evidence supports the conclusion that MSD's refusal to prepare an IEE when Matthew reentered high school was unreasonable. It was proper for the district court to credit HO Price's discussion of witness testimony that highlighted deficiencies in the BSD evaluation. Both the hearing officer and the district court were careful to note that neither was determining whether Matthew was entitled to special education services under the IDEA. Rather, they concluded that the evidence presented did not establish that he did not need such services. Their

determinations are entitled to deference, but even on a de novo review we would affirm.[4]

**B. The Parents' request for attorneys' fees was timely.**

HO Price issued his decision on June 6, 2011. On July 15, 2011, MSD filed its complaint in the district court seeking review of that decision. The Parents requested attorneys' fees for the proceedings before the hearing officer in their answer to the complaint that was filed on July 28, 2011.

In the district court, MSD argued that the request was untimely because the applicable limitations period was either 14 or 42 days, and both periods had expired. The Parents asserted that the 90-day limitations period for appealing an adverse decision from a due process hearing under the IDEA applied to claims for attorneys' fees. The district court disagreed with both parties.

The Parents' position was based on 20 U.S.C. § 1415(i)(2)(B), which provides that a party aggrieved by an administrative officer's decision may bring an action in a district court within 90 days of that decision. The district court reasoned that (1) this section applied only to parties that are aggrieved by the hearing officer's decision, not to those who prevailed; and (2) the section was added in 2004 but did not reference, or affect, the provision addressing attorneys' fees. The district court noted that other courts had held that the 90-day statute of limitations contained in § 1415(i)(2)(B)

---

[4] We reject MSD's challenges to the amount of expenses awarded by the district court and affirm the court's award of $6,854.00 as the reasonable expenses incurred by the Parents in procuring the IEE.

does not apply to claims for attorneys' fees under § 1415(i)(3)(B). *See Brandon E. v. Dep't of Educ.*, 621 F. Supp. 2d 1013, 1016 (D. Haw. 2008).**[5]**  On appeal neither party questions the district court's determination that the request for attorneys' fees is not subject to the 90-day limitations period.

MSD's assertion that a 14-day or 42-day limitations period applied was based on regulations promulgated pursuant to the Idaho Administrative Procedures Act. The 14-day period applies to requests for attorneys' fees from agency decisions "when [the] agency has authority to award costs and/or fees." Idaho Admin. Code r. 4.11.01.741.01 (2015). The 42-day period comes from the regulatory provision allowing appeals to a civil court from a hearing

---

**[5]** In *Brandon E.* the court reasoned:

> The IDEA does not authorize the recovery of attorney's fees by the prevailing party in administrative proceedings. Rather, Congress provided independent court action for such relief with no specific statute of limitations for such actions. *See* 20 U.S.C. § 1415(i)(3)(B). The Senate Report accompanying the amended IDEA supports this interpretation of the IDEA by explaining that § 615(i)(2)(B), codified as 20 U.S.C. § 1415(i)(2)(B), "gives a party 90 days from the date of the decision of the hearing officer *for appealing a due process hearing decision to State or federal district courts* [in the absence of an explicit state time limitation]." *See* S. Rep. No. 108–185, at 37 (2003) (emphasis added). This Senate Report implies that Congress intended the IDEA's limiting statute to apply exclusively to due process appeals to federal court and not to separate fee actions.

621 F. Supp. 2d at 1016.

officer's decision.  Idaho Admin. Code r. 08.02.03.109.05.g (2015).    However, that section does not appear to be applicable because it only applies to parties adversely affected by the hearing officer's decision.

Instead, the district court determined that the IDEA did not contain a limitation period governing the Parents' claim for attorneys' fees, and followed the approach set forth in *Ostby v. Oxnard Union High*, 209 F. Supp. 2d 1035, 1042 (C.D. Cal. 2002).  The district court in *Ostby* had reasoned:

> The IDEA specifies no limitations period governing a plaintiff's suit for attorney's fees. *See* 20 U.S.C. § 1415(i)(3)(B); *Zipperer v. Sch. Bd. of Seminole County*, 111 F.3d 847, 850 (11th Cir. 1997); *Powers v. Indiana Dep't of Educ.*, 61 F.3d 552, 554 (7th Cir. 1995). Therefore, we "must determine the most closely analogous state statute of limitations" and apply that statute "unless it would undermine the policies underlying the IDEA." *Livingston Sch. Dist. Nos. 4 & 1 v. Keenan*, 82 F.3d 912, 915 (9th Cir. 1996).  "In order to assess which state statute of limitations is most analogous, the court 'must characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle.'" *S.V. v. Sherwood School Dist.*, 254 F.3d 877, 879 (9th Cir. 2001) (quoting *Wilson v. Garcia*, 471 U.S. 261, 268 (1985)).

209 F. Supp. 2d at 1042 (parallel citations omitted).  *See also Brandon E.*, 621 F. Supp. 2d at 1016 ("As such, when

Congress fails to provide a statute of limitations in federal statutes, the U.S. Supreme Court has indicated that the settled practice is to adopt the most analogous state time limitation, so long as it is consistent with federal policy to do so.").

The inquiry as to the most analogous statute of limitations reveals a circuit split on the issue. The Sixth and Seventh Circuits have characterized attorneys' fees requests as ancillary to the dispute, and accordingly borrowed state statutes of limitations for judicial review of administrative agency decisions. *King v. Floyd Cnty. Bd. of Educ.*, 228 F.3d 622, 623 (6th Cir. 2000) (agreeing with the Seventh Circuit that the attorneys' fee issue is ancillary to the administrative proceeding); *Powers v. Ind. Dep't of Educ., Div. of Special Educ.*, 61 F.3d 552, 556 (7th Cir. 1995) (viewing "Powers' claim for attorneys' fees not as an independent action but as a claim ancillary to the underlying education dispute").[6] However, the Eleventh Circuit in *Zipperer v. School Board of Seminole County, Florida*, 111 F.3d 847 (11th Cir. 1997),

---

[6] The Seventh Circuit noted that:

> an action for attorneys' fees presents a unique problem in that it may arguably be characterized as either an independent cause of action under § 1415(e)(4)(B), or as ancillary to the judicial review of the administrative decision on educational placement. *Reed v. Mokena Sch. Dist.*, 41 F.3d 1153 (7th Cir.1994); *Dell* [*v. Bd. of Ed., Tp. High Sch. Dist.113*], 32 F.3d [1053] at 1062 [7th Cir. 1994]. In other words, the attorneys' fees claim could simply be considered an independent claim for money damages or it could be seen as just one part of the underlying dispute over the child's educational placement or educational plan.

*Powers*, 61 F.3d at 555.

characterized an attorneys' fee claim under the IDEA as an independent action and applied Florida's four-year statute of limitations.[7]

The district court in *Ostby* preferred the Eleventh Circuit's approach, noting that (a) "an action for attorney's fees is explicitly distinct from the administrative review process, and therefore could not be considered ancillary to that process"; (b) "the administrative agency has no jurisdiction to award attorneys' fees, and therefore [] there is no such thing as an action for review of an agency decision regarding fees"; (c) "the resolution of claims for attorneys' fees is less urgent and, in reality, is more likely to be resolved by the attorneys' interest in prompt payment than by a short period of limitations"; and (d) the longer period of time "is likely to encourage the involvement of parents, as represented

---

[7] The Eleventh Circuit reasoned:

> We agree that the IDEA provides two distinguishable causes of action under sections 1415(e)(2) and 1415(e)(4)(B). Most significantly, section 1415(e)(2) provides for the appeal of a substantive administrative decision, whereas section 1415(e)(4) provides for an independent claim for attorneys' fees. Because the district court, rather than the administrative agency, has jurisdiction to award fees, the prevailing party cannot appeal an administrative decision under section 1415(e)(4). Accordingly, we reject the school system's argument that a claim under section 1415(e)(4)(B) is analogous to the appeal of an administrative hearing. Instead, we find that section 1415(e)(4) provides a claim based on a statutory liability and is, thus, more analogous to Fla. Stat. ch. 95.11(3)(f).

*Zipperer*, 111 F.3d at 851.

by attorneys, in securing appropriate public educations for their children." 209 F. Supp. 2d at 1043–44.

The district court in *Ostby* also found our opinion in *Dreher v. Amphitheater Unified School District*, 22 F.3d 228 (9th Cir. 1994), instructive. In *Dreher*, one question was the limitations period for filing a court action challenging a school district's refusal to grant parents a due process hearing to determine financial responsibility for their child's speech therapy at a private school. *Id*. at 231. The IDEA did not specify a limitations period, and we chose to apply Arizona's one-year limitations period for liabilities created by statute, rather than the 35-day limitations period that applied to judicial review of administrative decisions. *Id*. at 232. We reasoned that: (1) because plaintiffs were not granted a due process hearing, their action was not analogous to an appeal from a final administrative decision; (2) a longer limitations period was consistent with federal policies; and (3) the child's education was not threatened by the duration of the claim. *Id.* The district court in *Ostby* found our reasoning in *Dreher* persuasive, noting "if the Ninth Circuit found that the action in *Dreher* — a challenge to a refusal to provide a due process hearing — was not analogous to judicial review of an administrative decision, then the Ninth Circuit probably would also find that an action for attorney's fees — over which an administrative agency has no jurisdiction — is also not analogous to review of an administrative decision." 209 F. Supp. 2d at 1044. Other district courts have followed *Ostby*.[8]

---

[8] *See J. H. v. Nevada City Sch. Dist.*, No. 14-0796, 2015 WL 1021424 at *5 (E.D. Cal. March 9, 2015); *Teresa L. v. Dep't of Educ.*, No. 09-348, 2009 WL 4017146 (D. Haw. Nov. 20, 2009) (unpublished); *Brandon E.*, 621 F. Supp. 2d at 1017.

Faced with an existing circuit split, we agree with the position taken by the district court. As set forth by the district court in *Ostby*, and consistent with the spirit of our decision in *Dreher*, we conclude that a request for attorneys' fees under the IDEA is more analogous to an independent claim than an ancillary proceeding. The fact that the hearing officer may not award attorneys' fees weighs in favor of holding that a request for attorneys' fees filed in the district court is not ancillary to the judicial review of the administrative decision. Moreover, the longer time period promotes the purposes of the IDEA. Indeed, the adoption of the state law limitations period for judicial review of administrative agency decisions might lead to the anomalous result that the party that prevailed before the hearing officer would have to decide whether to file an action seeking attorneys' fees before the party that lost before the hearing officer decided whether to seek judicial review. Accordingly, we affirm the district court's determination that the Parents' request for attorneys' fees was timely filed under the most analogous state statute of limitations.[9]

## C. The Parents are prevailing parties.

The IDEA provides that reasonable attorneys' fees may be awarded to a "*prevailing party* who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I) (emphasis added). The district court, citing *Weissburg v. Lancaster*

---

[9] This appears to be the three-year statute of limitations for statutory liability actions. Idaho Code § 5-218(1). *But see Henderson v. State*, 715 P.2d 978, 981 (Idaho 1986) (holding "42 U.S.C. § 1983 actions in Idaho must now meet the two-year Idaho statute of limitations for personal injury actions"). We need not decide this issue of state law as the Parents' request for attorneys' fees was timely under either state statute.

*School District*, 591 F.3d 1255 (9th Cir. 2010), held that the Parents had prevailed because the hearing officer's award materially altered the legal relationship between the parties. It found that "[i]n obtaining the relief ordered by the hearing officer — that the School District provide M.A. with an IEE at public expense — M.A.'s Parents clearly secured a remedy that fosters the purposes of the IDEA."

The Ninth Circuit has determined that to be a "prevailing party," a party must "succeed[] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Van Duyn*, 502 F.3d at 825 (quoting *Parents of Student W. v. Puyallup Sch. Dist. No. 3*, 31 F.3d 1489, 1498 (9th Cir. 1994)). On appeal, MSD contends that the Parents were not prevailing parties because "no material change to the legal relationship of the student and the school district resulted from the administrative proceeding." MSD asserts that there was no material change in the legal relationship because Matthew was never determined to be in need of special education services and that simply being awarded an IEE "is inarguably nothing more than a technical and de minimus result."

MSD cites the controlling law but reaches an incorrect conclusion. Here, the hearing officer's decision that Matthew was entitled to an IEE at public expense did result in the requisite "alteration in the legal relationship of the parties." *Buckhannon Bd. and Care Home, Inc. v. W. Va Dep't. of Health and Human Res.*, 532 U.S. 598, 605 (2001). As a result of the hearing officer's decision, MSD had to pay for an IEE and was required to consider the IEE before it could determine whether Matthew was entitled to special education services under the IDEA. Indeed, MSD thought this consequence of sufficient import that it filed an action in the

district court seeking to reverse the hearing officer's decision. The Parents are prevailing parties as that term has been defined by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and the Ninth Circuit in *Van Duyn*, 502 F.3d at 825.

### D. The Parents are not entitled to attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I).

Section 1415(i)(3)(B)(i)(I) provides that attorneys' fees may be awarded "to a prevailing party who is *the parent of a child with a disability*." (Emphasis added). Section 1401(3) defines "child with a disability" as a child with an impairment or disability "who, by reason thereof, needs special education and related services." MSD contends that this definition of "child with a disability" limits the availability of attorneys' fees under the IDEA to a parent whose child has been determined to need special education services. MSD reasons that because Matthew has not been determined to need special education services, the Parents are not eligible for an award of attorneys' fees pursuant to § 1415(i)(3)(B)(i)(I).

The Fifth Circuit adopted this approach in *T.B. v. Bryan Independent School District*, 628 F.3d 240 (5th Cir. 2010), relying, in part, on an unpublished opinion by the Third Circuit, *D.S. v. Neptune Township Board of Education*, 264 F. App'x. 186 (3rd Cir. 2008), which was factually similar to Matthew's case. The Fifth Circuit explained:

> In *Neptune Township*, parents of a child with various disorders filed a due process petition to compel special-education testing and services. The state administrative law judge ordered the school to conduct a

special-education evaluation but denied the other requested relief.  The school evaluated the child and concluded that he was not eligible for special-education services.  The parents amended their petition for a due process hearing to challenge the school's determination that the child was not eligible for special-education services but subsequently withdrew the appeal and filed for attorneys' fees under the IDEA. The district court denied the parents' motion for attorneys' fees because the child had not been determined to be eligible for special-education services.

On appeal, the Third Circuit concluded that the text of the IDEA's fee-shifting provision was unambiguous and interpreted the statute to bar recovery of attorneys' fees because "there was never a determination that the child needed special education," and therefore, the parents did not meet the plain language of the IDEA's fee-shifting provision. In so holding, the court acknowledged that the school "likely would have not completed the evaluations absent the ALJ's orders" and that "[b]ut for retaining counsel, the parents would not have secured [the special-education evaluation] for the child."  But, the court also noted that its interpretation of the statute was consistent with the purpose of the IDEA's fee-shifting provision—to allow parents of disabled children to effectuate their right to a free appropriate public education.  The court

rejected the suggestion that the fee-shifting provision should apply to children "merely suspected of having a disability."

*T.B.*, 628 F.3d at 244 (footnotes omitted).[10]

The Fifth Circuit acknowledged T.B.'s arguments that (a) other provisions of the IDEA extended procedural rights to children who had yet to be found to be disabled, and (b) "holding he is not eligible for recovery of attorneys' fees will have a chilling effect on future IDEA cases, frustrate parents' ability to hire counsel, and undermine the interests of the students and goals of the IDEA." 628 F.3d at 244–45. The Fifth Circuit, however, reasoned:

T.B.'s arguments cannot overcome the plain language of the statute. The Supreme Court has directed courts interpreting the IDEA to start with the text of the statute and has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." The Court has also stated that "[w]hen the statutory 'language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its

---

[10] The Fifth Circuit also noted that the Sixth Circuit in "an unpublished opinion interpreting an earlier version of the fee-shifting provision now found in the IDEA," had denied attorneys' fees when it had yet to be determined in the administrative proceedings whether the child had a learning disability." *T.B.*, 628 F.3d at 244 (citing *Edwards v. Cleveland Heights-Univ. Heights Bd. of Educ.*, 951 F.2d 349 (6th Cir. 1991) (unpublished)).

terms.'"    Here, the plain language of the
IDEA's fee-shifting provision limits recovery
of attorneys' fees to the parent of a "child
with a disability."

*Id*. at 245 (footnotes omitted).  In further response to TB's
arguments, the Fifth Circuit noted:

> Congress has provided some protections for
> children not yet determined to fit the
> definition of "child with a disability."  Section
> 1415(k)(5) and its protections in disciplinary
> proceedings might reflect a broader intent to
> protect children not yet determined to fit the
> definition of "child with a disability."   But
> just because Congress has specifically
> extended some protections to children not yet
> determined to meet the definition of "child
> with a disability" does not mean that it has
> extended all protections.  To the contrary, the
> language of the attorneys'-fee provision in
> § 1415(i)(3)(B)(i)(I) specifically provides the
> district court with discretion to award
> attorneys' fees to a "parent of a child with a
> disability."     Unlike   §   1415(k)(5),
> § 1415(i)(3)(B)(i)(I) makes no reference to
> children not yet determined to be disabled.
> The IDEA cannot be read to provide
> attorneys' fees to T.B., and any policies
> reflected in § 1415(k)(5) cannot overcome the
> express provisions in § 1415(i)(3)(B)(i)(I).

*Id*. at 245–46.  The Fifth Circuit concluded that "regardless of
the policy considerations and even if an alternate version of

the statute would better serve the goals of the IDEA, that is a decision appropriately left to Congress, not to this court." *Id.* at 246.

In Matthew's case, the district court declined to follow the Fifth Circuit's approach on the grounds that it could look beyond the language of a statute to avoid "an absurd result or a decision that would violate Congressional intent in enacting the statute." *See Barajas v. United States*, 258 F.3d 1004, 1012 (9th Cir. 2001). The district court reasoned that the fee-shifting provision was not as clear and unambiguous as the Fifth Circuit suggested, and that the term "parent of a child with a disability" is used in other parts of the IDEA to cover procedures that precede any determination of eligibility for special education services. The district court also found support for its approach in our opinion in *Hacienda La Puente Unified School District of Los Angeles v. Honig*, 976 F.2d 487 (9th Cir. 1992), where we held that although the IDEA referred to "children with disabilities," a child "not previously identified as disabled" could raise his or her alleged disability in an IDEA administrative due process hearing. *Id*. at 492.

Having determined that the IDEA was subject to differing interpretations, the district court concluded that the restrictive interpretation of the attorneys' fees provision was contrary to the Congressional intent to encourage, assist and make whole parents and attorneys who work to vindicate the rights of handicapped children. The district court worried that MSD's "interpretation would discourage parents from invoking their rights under the IDEA and create an incentive for schools to take an adversarial position early in the identification and evaluation process without fear of being liable for attorneys' fees."

We appreciate the district court's concerns, but agree with the Fifth Circuit that we are bound by the clear language in the IDEA limiting the award of attorneys' fees to parents of a "child with a disability," defined as a child determined to need special education services. Abiding by the plain language of the statute will not "thwart the purpose of the over-all statutory scheme or lead to an absurd result." *See Barajas*, 258 F.3d at 1012. The purpose of the IDEA is to provide a free and appropriate public education to all disabled children who need special education services. Limiting the award of attorneys' fees against school districts to instances where the child has been determined to need special education services is not inconsistent with this purpose. Rather, it preserves public resources for those disabled children most in need of services.

Moreover, limiting awards of attorneys' fees to parents of children who have been determined to need special education services is not inconsistent with the IDEA's emphasis on providing procedural rights to parents and children prior to final determinations of their need for services. *See Honig*, 484 U.S. at 311–12.[11] The IDEA provides a parent who

---

[11] Addressing the Education of the Handicapped Act, the predecessor to the IDEA, the Supreme Court noted;

> Envisioning the IEP as the centerpiece of the statute's education delivery system for disabled children, and aware that schools had all too often denied such children appropriate educations without in any way consulting their parents, Congress repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness. . . . Accordingly, the Act establishes various procedural safeguards that

believes that his or her child has a disability and is in need of special services with certain procedural rights toward a fair determination of the child's needs. However, this primary purpose is not necessarily furthered, and might well be impeded, if parents of children who are determined not to need special education services were eligible for an award of attorneys' fees based on having prevailed on some issue in the process.

Indeed, the distinction between assuring that parents have an opportunity to have their children evaluated and awarding attorneys' fees distinguishes this case from our opinion in *Hacienda*. In *Hacienda*, the restrictive interpretation proposed by the school district would have frustrated a parent's ability to have the child's need for special services determined. Here, although the process took an inordinate amount of time, MSD considered Matthew's IEE, and determined that he did not need special services. Thus, Matthew and his parents received all the process they were entitled to under the IDEA.

Although Congress could have established a more inclusive fee shifting provision, we agree with the Fifth Circuit that Congress chose plain language that limits eligibility for attorneys' fees under the IDEA to parents whose children have been determined to need special services. Further, this interpretation is reasonable and — as

---

guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.

484 U.S. at 311–12 (citations omitted).

courts are wont to say — "not inconsistent" with the overall purpose of the Act. Accordingly, we vacate the district court's award of attorneys' fees.

**E. We vacate the injunction against Matthew's graduation.**

The district court cited 20 U.S.C. § 1415(j), known as the "stay-put" provision, as authorizing its injunction prohibiting MSD from graduating Matthew.[12] The district court reasoned that it had jurisdiction even though the action concerned Matthew's entitlement to an IEE, not whether he needed special education services, and that the stay-put provision applied even though Matthew had not been found to need special services. The district court found that MSD's position on this issue conflicted with the purpose of the IDEA, which was "to strip schools of the unilateral authority they had traditionally employed to exclude disabled students" (quoting *Honig*, 484 U.S. at 323). The district court further held, relying on Ninth Circuit precedent, that relief was not barred by the Parents' failure to request relief at the administrative level, and that the Parents did not need to meet the traditional criteria for injunctive relief. *See N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1110 (9th Cir. 2010) (adopting the Second

---

[12] 20 U.S.C. § 1415(j) provides that:

> during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

Circuit's reasoning in *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195 (2d Cir. 2002)), "that exhaustion of administrative remedies was not required because of the time-sensitive nature of the right § 1415(j) was designed to protect—*i.e.*, the right to remain in the current educational placement."); *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1037 (9th Cir. 2009) ("A motion for stay put functions as an 'automatic' preliminary injunction, meaning that the moving party need not show the traditionally required factors (e.g., irreparable harm) in order to obtain preliminary relief.").

We agree that the district court had jurisdiction to consider the request for an injunction,[13] and that the Parents did not have to show irreparable harm. In *Rocklin Unified*, we noted:

> The fact that the stay put provision requires no specific showing on the part of the moving party, and no balancing of equities by the court, evidences Congress's sense that there is a heightened risk of irreparable harm inherent in the premature removal of a disabled child to a potentially inappropriate educational setting. In light of this risk, the stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process. It

---

[13] *See, e.g. M.P. v. Governing Bd. of the Grossmont Union High Sch. Dist.*, 858 F. Supp. 1044 (S.D. Cal. 1994) (applying the stay-put provision to a child in the general education program without an IEP to prevent his expulsion during the second semester of his senior year for bringing a pellet gun to school).

is unlikely that Congress intended this protective measure to end suddenly and arbitrarily before the dispute is fully resolved.

559 F.3d at 1040.

Nonetheless, we question whether the district court should have issued the injunction in the first place, and we now vacate the injunction. If a child's need for special education services (albeit contested) continued after he would otherwise graduate, the general purposes behind the stay-put provision and the IDEA might support an injunction requiring the continuation of services. Here, however, Matthew was not receiving special services, but was in the general education program. As he had met the criteria for graduation, he had presumably received all the benefits that the general education program offered. Accordingly, it is doubtful that the purposes of the stay-put provision were served by enjoining Matthew from graduating. This seems particularly true here as the Parents have consistently argued that the general education program was not providing Matthew the supportive services he needed. In any event, it has now been three years since the entry of the injunction preventing Matthew's imminent graduation from high school and Matthew has been determined not to need special services.[14] Whatever benefit that might have flowed from the injunction would appear to have been exhausted, and oral argument did not reveal any salient grounds for maintaining the injunction. Accordingly, we hereby vacate the injunction prohibiting Matthew's graduation from high school.

---

[14] *See* our concurrently filed disposition in the Parents' appeal, No. 14-35081, affirming the determination that Matthew was not eligible for special education services.

## IV

We appreciate the concerns that underlie the parties' positions, and they have informed our disposition of these appeals. Pursuant to the applicable standards of review we conclude that: (1) the district court and the hearing officer reasonably determined that Matthew was entitled to an IEE at public expense; (2) the Parents' request for attorneys' fees is more analogous to an independent claim than an ancillary proceeding and thus was timely filed; (3) by procuring an IEE at public expense, the Parents were "prevailing parties" as that term has been defined in *Hensley*, 461 U.S. at 433, and *Van Duyn*, 502 F.3d at 825; (4) because the plain language of the IDEA limits awards of attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I) to instances in which the child has been determined to need special education services, and Matthew had not been found to need such services, the Parents are not eligible for an award of attorneys' fees under the IDEA; and (5) the injunction preventing Matthew's graduation from high school must be lifted. Accordingly, we vacate the district court's award of attorneys' fees and its injunction preventing Matthew from graduating.

**AFFIRMED** in part, **REVERSED** in part, and **VACATED** in part. Each side shall bear its own costs.