**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

C.B., a minor, by and through his
Guardian Ad Litem, Alexis
Baquerizo,
            *Plaintiff-Appellee,*

            v.

GARDEN GROVE UNIFIED SCHOOL
DISTRICT,

            *Defendant-Appellant.*

No. 09-56588

D.C. No.
8:08-cv-01047-
RSWL-CW

OPINION

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, Senior District Judge, Presiding

Argued and Submitted
February 18, 2011—Pasadena, California

Filed March 28, 2011

Before: Andrew J. Kleinfeld and Susan P. Graber,
Circuit Judges, and Thomas S. Zilly,* Senior District Judge.

Opinion by Judge Graber

---

*The Honorable Thomas S. Zilly, United States Senior District Judge
for the District of Western Washington, sitting by designation.

.

## COUNSEL

Tania L. Whiteleather, Law Office of Tania L. Whiteleather, Lakewood, California, for the plaintiff-appellee.

S. Daniel Harbottle, Harbottle Law Group, Costa Mesa, California, for the defendant-appellant.

## OPINION

GRABER, Circuit Judge:

After the Garden Grove Unified School District ("District") repeatedly failed to provide a free appropriate public education to student C.B., as required by the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482,

his aunt and guardian ("Guardian") enrolled C.B. in a non-public program, the Reading and Language Center ("Center"). Guardian sought reimbursement for the full cost of sending C.B. to the Center. An administrative law judge ("ALJ") found that C.B. received significant educational benefits from attending the Center. But, because the ALJ found that the Center did not meet all of C.B.'s educational needs, he awarded only half of the reimbursement sought. Guardian filed this action, as a result of which the district court awarded full reimbursement. We affirm, because the statute does not require that a private school placement provide all services that a disabled student needs in order to permit full reimbursement.

## BACKGROUND

C.B. is eligible for special education and related services because of autism and attention deficit disorder. In 2006, the District concluded that he has "unique needs in reading comprehension, math, math applications, written communications strategies, pre-vocational, psychomotor (gross motor skills), socialization, fine motor skills, and social skills communication." The District completed an individualized education plan ("IEP") and, in accordance with it, assigned C.B. to various specialized services designed to meet his unique needs.

Guardian submitted a letter of dissent, explaining why the services were inadequate to meet the child's needs. She told the District that she would be obtaining supplemental private services and seeking reimbursement.

C.B. began receiving supplemental services at the Center in November 2006. Under California law, the Center is a non-public agency but not a certified nonpublic school. Its certification allows it to provide only language-based services. It cannot provide certain educational services that C.B. needs, such as instruction in arithmetic.

In the summer of 2007, the District proposed a new IEP for the coming school year. Guardian rejected the proposal, again objecting that it was inadequate to meet C.B.'s needs for several specified reasons. C.B. continued his instruction at the Center. Beginning in the summer of 2007, C.B. attended the Center exclusively and no longer attended public school. Guardian paid for all instruction at the Center and provided private transportation for C.B. to and from the program. While at the Center, C.B. showed "significant growth" in many learning areas and in social development.

Through Guardian, C.B. filed a request for a due process hearing in 2007. Guardian identified a number of issues for resolution and sought full reimbursement for tuition at the Center, as well as for transportation costs incurred by Guardian.

The ALJ found that the District had failed to provide a free appropriate public education to C.B. Turning to the services offered by the Center, the ALJ held that the Center was an appropriate placement while C.B. was receiving supplemental and summer instruction. The ALJ therefore awarded full reimbursement for tuition and transportation for the 2006-07 school year and the summer of 2007. But the ALJ drew a different conclusion as to the 2007-08 school year. For that period, the ALJ held that, because the Center could not provide a comprehensive program to meet *all* of C.B.'s unique educational needs (e.g., the Center could not instruct him in arithmetic), the equities justified only partial reimbursement.

Guardian then filed this action on C.B.'s behalf, challenging the ALJ's award of partial reimbursement for the 2007-08 school year and seeking full reimbursement for that period. The district court rejected the ALJ's conclusion, and the District's argument, that reimbursement is warranted only when a private placement provides the full range of educational services that a disabled student requires. Because C.B. received educational benefits from all services that the Center pro-

vided, the district court awarded full reimbursement to Guardian for the cost of obtaining those services, along with transportation. The District timely appeals.

## DISCUSSION[1]

**[1]** In *Florence County School District Four v. Carter*, 510 U.S. 7 (1993), the Supreme Court set minimum criteria that must be met before a guardian may obtain reimbursement for the unilateral placement of a child in a private school. A parent or guardian is "entitled to reimbursement only if a federal court concludes both (1) that the public placement violated the IDEA, and (2) that the private school placement was proper under the [IDEA]." *County of San Diego*, 93 F.3d at 1466 (citing *Carter*). If either criterion is not met, the parent or guardian may not obtain reimbursement. *Id.* If both criteria are satisfied, the district court then must exercise its "broad discretion" and weigh "equitable considerations" to determine whether, and how much, reimbursement is appropriate. *Carter*, 510 U.S. at 15-16 (internal quotation marks omitted).

**[2]** Here, it is undisputed at this stage of the proceedings that the public placement violated the IDEA, so the first absolute requirement of *Carter* is met. The second question is whether the placement at the Center was "proper."

The district court found (as had the ALJ) that the Center met some, but not all, of C.B.'s unique educational needs and

---

[1]We review for clear error the district court's factual findings and review de novo its legal conclusions. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1104 (9th Cir. 2007). We review de novo the appropriateness of a special education placement. *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996). We review for abuse of discretion the district court's determination to grant reimbursement under equitable principles. *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1084 (9th Cir. 2008), *aff'd*, 129 S. Ct. 2484 (2009). Our focus is on the district court's decision, not the ALJ's decision. *Ashland Sch. Dist. v. Parents of Student E.H.*, 587 F.3d 1175, 1183 (9th Cir. 2009).

that it provided significant educational benefits. The District argues that, because the Center could not meet *some* of C.B.'s additional needs (such as instruction in arithmetic), the placement was not "proper" within the meaning of the IDEA. We disagree.

**[3]** The Supreme Court has answered the District's legal argument in this regard. *Carter* held that reimbursement was warranted even though the private school "fail[ed] to meet state education standards." 510 U.S. at 14. In other words, the private school could not provide the student with all of the necessary educational benefits, but reimbursement was available nonetheless. *Id.* at 15-16.

**[4]** The Second Circuit has rejected the District's argument even more explicitly and more forcefully:

> *To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential.* They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.

*Frank G. v. Bd. of Educ.*, 459 F.3d 356, 365 (2d. Cir. 2006) (emphasis added) (citation and internal quotation marks omitted).[2] We agree with and adopt that standard in interpreting what constitutes a "proper" placement within the meaning of the IDEA.

---

[2]In *Gagliardo v. Arlington Central School District*, 489 F.3d 105, 113-15 (2d Cir. 2007), the private school offered *no* special education services applicable to the student, so that the placement was not "proper." *Gagliardo* did not alter the test established in *Frank G.*

In conducting our de novo review of the "proper" test, we give weight to the ALJ's findings. *County of San Diego*, 93 F.3d at 1466. There is no real dispute about the facts, though. As the ALJ found, and as all parties appear to agree, the Center delivered many, but not all, of the special education services that C.B. needed.

The remaining question is whether the district court's balancing of the equities went beyond the bounds of its discretion. The district court gave great weight to the fact that C.B. received significant benefits in important areas of his special educational needs. The District argues that, despite that reasoning, the district court abused its discretion by not reducing Guardian's reimbursement commensurate with the missing elements of C.B.'s special educational needs. We see nothing in the statute or precedents that mandates that result.

Essentially the District is suggesting perverse financial incentives. If Program A provides 80% of a child's special educational needs and the parent or guardian selects Program A, the District would require a court to dock the parent or guardian by (say) 20%; but if the parent or guardian adds Program B, which offers the remaining 20% of appropriate programming, the District would be content to reimburse all of Program A plus all of Program B. Equity surely would permit a reduction from full reimbursement if Program A provides too much (services beyond required educational needs), or if it provides some things that do not meet educational needs at all (such as purely recreational options), or if it is overpriced, but equity does not require a reduction in reimbursement just because a parent or guardian cannot afford to give the child everything (or cannot find a program that does).

**[5]** In this case, while the Center did not satisfy all of C.B.'s needs, everything that the Center provided was proper, reasonably priced, and appropriate, and the program benefitted him educationally. Accordingly, the district court did not abuse its discretion by awarding full reimbursement.

**AFFIRMED.**