**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARLOS BAQUERIZO, JR.; ALEXIS BAQUERIZO, *Plaintiffs-Appellants*, v. GARDEN GROVE UNIFIED SCHOOL DISTRICT, A Local Educational Agency, *Defendant-Appellee.* | No. 14-56464 D.C. No. 8:12-cv-01825-JVS-CW OPINION |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted March 15, 2016
Santa Ana, California

Filed June 22, 2016

Before: RAYMOND C. FISHER, MILAN D. SMITH, JR.,
and JOHN B. OWENS, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Individuals with Disabilities Education Act

The panel affirmed the district court's judgment in favor of the defendant school district in an action filed by a student and his guardian under the Individuals with Disabilities Education Act.

The panel held that the school district did not violate the procedural requirements of the IDEA in two Individualized Education Programs, or IEPs. As to the first IEP, the panel agreed with the district court that any procedural failure on the part of the school district was caused by the student's guardian, and that, in any event, the student's placement was a free appropriate public education, or FAPE. As to the second IEP, the school district did not commit a procedural violation by failing to assess the student for anxiety or by failing to determine baselines for speech and language goals. In addition, the student's placement was a FAPE in the least restrictive environment. Accordingly, the guardian was properly denied reimbursement for private school placement.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Tania L. Whiteleather, Law Offices of Tania L. Whiteleather, Lakewood, California, for Plaintiffs-Appellants.

S. Daniel Harbottle, Harbottle Law Group, Irvine, California, for Defendant-Appellee.

## OPINION

M. SMITH, Circuit Judge:

Carlos Baquerizo (Carlos or Student) and his guardian, Alexis Baquerizo (Guardian), seek reimbursement from Garden Grove Unified School District (Garden Grove or district) for the cost of Carlos's private education during the 2009–2010 and 2011–2012 school years. They claim that Garden Grove failed to comply with the procedural requirements of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1491o (IDEA), and therefore failed to provide a free appropriate public education (FAPE) in the least restrictive environment (LRE) for Carlos. The administrative law judge (ALJ) denied reimbursement, and the district court affirmed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Carlos Baquerizo has autism. During the 2006–2007 school year, Carlos attended a general education program at a public school within the Garden Grove school district. Carlos's instruction was supplemented by instruction at the Pliha Reading and Language Center (PRLC). In the summer

of 2007, Guardian withdrew Carlos from public school and he began full-time instruction at PRLC. He continued there until PRLC closed in July 2009. At that time, Carlos enrolled in the Pliha Speech and Learning Center (PLSC)[1], where he remained until he graduated from high school in 2014. Carlos, his Guardian, and Garden Grove have litigated the issue of whether Garden Grove is required to reimburse Guardian for Carlos's private instruction with regard to every school year since 2007.

Under the IDEA, a school district must work with a disabled student's guardian at the end of each school year to prepare an Individualized Education Program (IEP) for the upcoming school year. At an IEP meeting, the school district uses assessments of the student's performance and educational needs in order to offer an individualized educational placement. The two IEPs at issue in this case are the June 2009 IEP, created for the 2009–2010 school year, and the June 2011 IEP, created for the 2011–2012 school year. Because an understanding of the IDEA litigation involving Carlos's other school years is helpful to understanding the case before us, we will outline the IEPs since Carlos left public school.

## I.   The 2006–2007 and 2007–2008 School Years

During the 2006–2007 school year, Carlos attended both public school and PRLC. During the summer of 2007, he began attending PRLC exclusively, and continued to do so throughout the 2007–2008 school year. Guardian filed a request for a due process hearing before the California Office of Administrative Hearings, seeking full reimbursement for

---

[1] Barbara Pliha operated both PRLC and PLSC.

Carlos's tuition at PRLC, as well as transportation costs. *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155 (9th Cir. 2011). As to these school years, it was undisputed that the education offered by Garden Grove was not a FAPE for Carlos. The only decision remaining was whether and to what extent Guardian should be reimbursed for her expenses. *Id.* at 1159. The ALJ awarded only partial reimbursement for the 2007–2008 school year because PRLC did not meet all of Carlos's educational needs. That decision was reversed by the district court. The district court ruled that PRLC provided "proper" alternative services under the IDEA and that full reimbursement was appropriate, despite the fact that it did not meet all of Carlos's needs. We affirmed. *Id.* at 1160.

## II.  The 2008–2009 School Year

No IEP meeting was held for the 2008–2009 school year. Guardian filed a due process hearing request, contending that in failing to hold an IEP meeting, Garden Grove had denied Carlos a FAPE and that she was entitled to reimbursement for his educational expenses. OAH Case No. 2010041542. The ALJ ruled that the failure was caused exclusively by the obstructions created by Guardian and PRLC (Garrett Decision). During the period "between May 16, 2008 to June 17, 2009," ALJ Garrett found that Garden Grove "made great efforts to conduct assessments, convene an IEP meeting, and make an offer of placement and services." Guardian "proved to be uncooperative, and was chiefly responsible for the year-long delay." Garden Grove "frequently scheduled and rescheduled assessment sessions and IEP meetings, in an effort to accommodate Guardian." Garden Grove "also drafted and forwarded to [P]RLC multiple authorizations to observe student, amid [P]RLC's belated claims that previous

authorizations had expired." Guardian unreasonably withheld the information that Carlos had been attending a social skills group for most of the year, which Garden Grove employees "would have observed . . . had they known that Student was receiving such services."

The Garrett Decision was affirmed by the district court on February 6, 2012 (First Selna Decision). Guardian did not appeal the First Selna Decision, and it therefore became final in March 2012.

## III.    The May 2009 Settlement

A settlement was executed on May 7, 2009 to "settle fully and finally resolve all differences, disputes, and controversies existing between the Parties related to the consolidated OAH Cases 2009020458 and 2009040166." OAH Case No. 2009020458 was a due process hearing request from Garden Grove filed on February 12, 2009, alleging that it had "made numerous attempts to request dates and times convenient for the Guardian to complete the assessments" pursuant to an assessment plan created in November 2007. Garden Grove alleged that Guardian had consistently failed to make Carlos available, and had otherwise hindered the ability of Garden Grove's assessors to complete the required assessments. OAH Case No. 2009040166 was a due process hearing request from Guardian, alleging that the failure to hold the assessments was because she had issues with transporting Carlos to the testing sites due to her job constraints, and that Garden Grove had unreasonably failed to provide transportation or arrange alternative testing sites. The May 2009 Settlement resolved these assessment disputes, providing that

Guardian agrees to make Student available for the completion of assessments. The Parties have agreed that the following assessments will be completed as follows:

a. May 12, 2009: 8:30 a.m. - 10:00 a.m. Audiological screening at District Office.

b. May 14, 2009: 8:30 a.m. - 10:00 a.m. Speech & Language assessment at Cook Elementary.

The Settlement Agreement purports to "resolve[] any and all issues between the Parties raised in the consolidated OAH Cases . . . up to and including the date of execution of this Agreement."

## IV.    The 2009–2010 School Year

On June 18, 2009, six weeks after the execution of the May 2009 Settlement Agreement and a single day after the time period at issue in the Garrett Decision, Garden Grove held an IEP meeting attended by Guardian and her legal counsel. In that IEP, Garden Grove offered Carlos a placement at Jordan Intermediate School, in a special day class for students with mild to moderate disabilities. The placement included two hours of small group and individual speech and language therapy instruction per week; forty-five minutes of occupational therapy per week; ongoing monitoring of his progress in general education; and eight hours of small-group intensive behavioral instruction per week. Guardian rejected this offer and re-enrolled Carlos in PRLC. In the comments of the June 2009 IEP, Guardian requested a "complete IEE in psychoed, Speech and

Language, [intensive behavioral instruction], and [central auditory processing disorder]." Garden Grove did not provide the IEEs; it only provided the assessments agreed to in the May 2009 Settlement Agreement.

Guardian waited almost two years to challenge the June 2009 IEP and request reimbursement. On June 15, 2011, she filed a request for a due process hearing. OAH Case No. 2011060840. During the intervening two years, the parties held an IEP for the 2010–2011 school year and initiated administrative proceedings over that IEP. Because of the delay, the dispute over the 2009–2010 school year was consolidated with the litigation over the 2011–2012 school year. *See infra* Part VI.

## V.  The 2010–2011 School Year

In the June 2010 IEP, Garden Grove offered Carlos a placement at Buena Park Speech Language Development Center (Buena Park). Like the June 2009 IEP offer at Jordan Intermediate School, Carlos would not have been placed in a general education class with typical peers at Buena Park. Instead, the IEP would have placed him in a small group with other students with mild to moderate special education needs. In December 2010, Garden Grove filed a request for a due process hearing to establish the appropriateness of this placement. In October 2011, ALJ Myers-Cregar issued a decision finding that the Buena Park placement was a FAPE in the LRE for Carlos (Myers-Cregar Decision). OAH Case No. 2010120784. Specifically, the Myers-Cregar Decision found that a small-group setting was more appropriate for Carlos than a general-education setting because he was currently being instructed in a one-on-one setting at PRLC and it was important to "minimize any harmful effect of

transitioning away from individual instruction." Guardian appealed the Myers-Cregar Decision to the district court, which affirmed (Second Selna Decision). The Second Selna Decision ruled that a general education placement "would be highly problematic for Student's transition, particularly given that he has been in individualized placement for the last three years." We affirmed. *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 575 F. App'x 796 (9th Cir. 2014).

## VI.    The 2011–2012 School Year

In the June 2011 IEP, Garden Grove again offered Carlos a placement at Buena Park. Guardian again refused to consent to the IEP. In October 2011, Garden Grove filed a due process hearing request seeking a declaration that the June 2011 IEP was appropriate. OAH Case No. 2011100955. Because Guardian had recently (on June 15, 2011) filed a request for a due process hearing and reimbursement for the 2009–2010 school year (OAH Case No. 2011060840), ALJ Ruff consolidated the two proceedings and reviewed both the June 2009 IEP and the June 2011 IEP. The issues before ALJ Ruff were substantially similar to the ones before us today: Whether the school district committed procedural violations of the IDEA by failing to conduct appropriate assessments of Carlos's needs, whether it offered a FAPE in the IEPs, and if not, whether Guardian should be reimbursed for Carlos's private educational expenses. The ALJ denied reimbursement in a ruling issued in July 2012. She ruled that many of the issues about whether Garden Grove properly assessed Carlos had been "already resolved in prior litigation between the parties" in the Garrett Decision, which had been issued a few months earlier in March 2012. She concluded that to the extent the issues were not precluded, Guardian failed to show a denial of a FAPE in either the June 2009 IEP or June 2011

IEP. The district court affirmed, after which Guardian filed this timely appeal.

## ANALYSIS

In reviewing the district court's judgment in favor of Garden Grove, we review conclusions of law *de novo* and findings of fact for clear error. *Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001). Whether a proposed IEP constitutes a FAPE is a question of law we review *de novo*. *Id.* "We, like the district court, however, 'must give "due weight" to judgments of education policy when [we] review state hearings. . . . [C]ourts should not substitute their own notions of sound education policy for those of the school authorities which they review.'" *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994) (alterations in original) (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)). "We give deference to the administrative findings of the [ALJ] particularly when . . . they are thorough and careful." *Id.*

The IDEA was passed "to ensure that all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). A FAPE is defined as an education that is provided at public expense, meets the standards of the state educational agency, and is in conformity with the student's IEP. *Id.* § 1401(9). In creating an IEP, a school district is procedurally required to conduct individual evaluations (and reevaluations) of the student, using "a variety of assessment tools and strategies" to gather information to determine the content of the IEP. *Id.* § 1414(b)(1)–(2).

In reviewing compliance with the IDEA, we first consider whether the district complied with the procedures set forth in the IDEA, and then consider whether the IEP was reasonably calculated to enable the child to receive educational benefits. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07 (1982). "Not every procedural violation . . . is sufficient to support a finding that the child in question was denied a FAPE." *Amanda J.*, 267 F.3d at 892. A student is denied a FAPE if a procedural violation "result[s] in the loss of educational opportunity . . . or seriously infringe[s] the parents' opportunity to participate in the IEP formulation process." *Id.* (internal quotation marks and citation omitted).

## I.   June 2009 IEP

Guardian argues that Garden Grove violated the procedural requirements of the IDEA in the June 2009 IEP. Specifically, she claims that 1) Garden Grove violated the IDEA by failing to assess Carlos before the meeting; 2) Garden Grove impermissibly failed to conduct the requested IEEs; and 3) Guardian was prevented from participating in the IEP meeting. She implies that these procedural failures led to a placement offer from Garden Grove that did not qualify as a FAPE, and that she was therefore justified in placing Carlos in private instruction and is entitled to reimbursement.

We find these arguments to be unpersuasive. We agree with the district court and ALJ Ruff that any procedural failure on the part of Garden Grove was caused by Guardian, and that, in any event, the Jordan Intermediate School placement was a FAPE.

### A. Assessments

By its own admission, Garden Grove did not have updated performance levels for Carlos at the June 2009 IEP meeting, which made it difficult for the IEP to set accurate goals. However, as the district court correctly noted, "[t]here is no evidence in the record to suggest that [Garden Grove] lacked present levels for Student for any reason other than the Guardian and [P]RLC's delays." That issue was fully and finally litigated in the Garrett Decision.

The Garrett Decision addressed the 13 months immediately prior to the June 2009 IEP, and ruled that up until June 17, 2009, Guardian had thwarted Garden Grove's "great efforts to conduct assessments" by being uncooperative. The First Selna Decision upheld the Garrett Decision in its entirety, and was not appealed. In this appeal, Guardian suggests that the previous litigation—centered around Garden Grove's failure to conduct assessments through June 17, 2009—should have no bearing on whether the goals set one day later were supported by appropriate assessments. Not so. The ability of Garden Grove to obtain assessments *prior* to the meeting on June 18, and arrive armed with that data, is directly relevant to whether any procedural defects were excusable. Thus, the Garrett Decision precludes Guardian from arguing that Garden Grove violated the IDEA because it failed to assess Carlos in time for the June 2009 IEP.

### B. IEEs

Guardian argues that Garden Grove violated the IDEA when it failed to conduct the IEEs she requested in the comments to the June 2009 IEP. An IEE is "conducted by a

qualified examiner who is not employed by the public agency responsible for the education of the child in question." 34 C.F.R. § 300.502(a)(3)(i). "If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either – (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or (ii) Ensure that an independent educational evaluation is provided at public expense . . . ." *Id.* § 300.502(b)(2). It is undisputed that Garden Grove did neither.

ALJ Ruff excused this failure by invoking the May 2009 Settlement Agreement, in which Guardian and Garden Grove settled the dispute that had been ongoing since November 2007 about what assessments must be conducted. The May 2009 Settlement Agreement explicitly resolves issues only through the date of execution (May 7) and also resolves disputes only as to OAH Case Nos. 2009020458 and 2009040166. Neither of those OAH cases are directly on appeal in this consolidated proceeding, and Guardian made the IEE request six weeks after the Settlement Agreement was executed. Thus, the IEEs are perhaps not technically foreclosed by the language of the Settlement Agreement. However, they are certainly covered by the substance of the Settlement Agreement. The Settlement Agreement resolved an ongoing dispute over assessments; the purpose of those assessments was to gather data to be used in creating future IEPs. Guardian agreed that only two assessments were required, and then six weeks later—at the very next IEP meeting—claimed that *additional* assessments were needed in order to find an appropriate placement for Carlos.

Garden Grove might have been required under the IDEA to conduct the requested IEEs, because Guardian did not

explicitly relinquish her right to request them in the Settlement Agreement. However, we agree with the district court's alternative conclusion that "[e]ven if the District should have responded to the [request for an] IEE, there is no evidence of any substantive denial of FAPE based on this failure." Guardian had agreed in the Settlement Agreement that the two assessments held in May were appropriate, which indicates that she agreed those assessments were all that were needed to create the upcoming IEP. The lack of prejudice is further evidenced by the fact that she failed to raise the issue for two years, "after an intervening IEP was held and additional testing conducted."

## C. Guardian's Participation

Guardian was not prevented from meaningfully participating in the June 2009 IEP meeting. She attended the meeting, along with her legal counsel. ALJ Ruff found that Guardian's counsel was "very active in making comments and asking questions throughout the meeting." "District IEP team members were responsive to counsel's questions and comments. At no point during the meeting was Student's Guardian or Student's counsel denied the ability to participate in the discussion." Guardian contends that Garden Grove did not allow her to discuss the "continuum" of placement options that might be available to Carlos prior to making its offer of FAPE. However, Guardian has pointed us to no statute or case law—and we can find none—indicating that a guardian is prevented from "participating" in the IEP process if the school district first prepares an offer to be discussed at the IEP meeting, instead of conducting a free-wheeling discussion and then creating an offer, and we see no logical reason that such would be the case. Although, as ALJ Ruff noted, it is "improper for the district to prepare an IEP

without parental input, with a preexisting, predetermined program and a 'take it or leave it' position," that did not occur here.

### D. FAPE

We agree with ALJ Ruff and with the district court that any procedural violation of the IDEA on the part of Garden Grove is excused because they were directly caused by Guardian. Furthermore, whether a procedural violation occurred is only half of the inquiry. We will only reverse the decision of the ALJ if a procedural violation "is sufficient to support a finding that the child in question was denied a FAPE." *Amanda J.*, 267 F.3d at 892. We conclude that the June 2009 IEP did not deny Carlos a FAPE.

When reviewing whether a proposed educational setting is "appropriate," we employ the "snapshot" rule, which instructs us to judge an IEP not in hindsight, but instead based on the information that was reasonably available to the parties at the time of the IEP. *Adams v. Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999). "To the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled . . . ." 20 U.S.C. § 1412(a)(5)(A). "[S]pecial classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids cannot be achieved satisfactorily." *Id.* This "sets forth Congress's preference for educating children with disabilities in regular classrooms with their peers." *Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H. ex rel. Holland*, 14 F.3d 1398, 1403 (9th Cir. 1994). To reach this objective, courts apply a four-part test to review whether

a school district appropriately placed a child outside of a regular classroom setting. We consider "(1) the educational benefits of placement full-time in a regular class; (2) the non-academic benefits of such placement; (3) the effect [the student] ha[s] on the teacher and children in the regular class; and (4) the costs of mainstreaming [the student]." *Id.* at 1404.

There is no indication in the record that Garden Grove's failure to assess Carlos prior to making its placement offer deprived him of a FAPE. The thorough and careful Ruff Decision points out that at the June 2009 IEP, Garden Grove team members "understood that they did not have updated information and therefore proposed to revisit Student's IEP after Student had been in the District's program for 30 days." "In light of the background of this case, including the prior litigation . . . . [this] was an acceptable solution to the lack of updated information." In this context, Guardian cannot persuasively demonstrate that the lack of updated assessments substantially harmed Carlos, or that the resulting offer of placement at Jordan Intermediate School was not a FAPE.

Indeed, Guardian's briefing in this case does not articulate *any* reason why the June 2009 IEP offer of placement at Jordan Intermediate School would have been different or more appropriate had Garden Grove successfully evaluated Carlos in the months leading up to the June 2009 IEP. At most, Guardian argues that "without full assessment and identification of Carlos' needs," Garden Grove *must* have proposed a placement that was not consistent with those needs. This generalized argument was not enough to carry the Guardian's burden of proof before the ALJ. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005) ("The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief."). And on

appeal, we cannot conclude that the ALJ's conclusion on that score was clearly erroneous. *See Amanda J.*, 267 F.3d at 887.

As to the substance of the offer, we agree with ALJ Ruff that when we view Garden Grove's offer through the lens of the *Rachel H.* factors,[2] it was appropriate to place Carlos in a small-group setting for a transitional period. Carlos and his Guardian have introduced no evidence to show that Carlos would have benefitted by a typical classroom setting, and Ms. Pliha affirmatively testified that he would not have gained a benefit in such a classroom. Instead, she testified that Carlos needed to be educated in a one-on-one setting[3]—which is even more restrictive than a small-group setting. As to non-academic benefits, Carlos might have benefitted socially if he were educated with other students, but Guardian fails to explain why the small-group setting at Jordan Intermediate School would not have provided those social benefits. The two remaining *Rachel H.* factors do weigh in favor of placing Carlos in a mainstream environment: there is no evidence that he would have been disruptive in a regular classroom, or that it would have been cost prohibitive. However, ALJ Ruff reasonably determined that the first factor—Carlos's

---

[2] Guardian argues that the June 2009 IEP is defective because Garden Grove did not explicitly address the *Rachel H.* factors in that document. However, Guardian has not cited to any law that suggests the school district, in the IEP document itself, must justify its placement offer by explicitly applying the *Rachel H.* framework. Instead, *Rachel H.* articulates a test that courts employ when reviewing the school district's decision.

[3] Guardian's contention that Jordan Intermediate School was not appropriate because it did not include instruction with typical peers is undermined by her decision to educate Carlos at PLSC instead. At PLSC, Carlos was educated in a one-on-one setting with *no* peers—typical or not.

academic needs—weighed most heavily against a mainstream environment. The small classroom offered by Garden Grove would have been much better for Carlos's education than general education, particularly given the testimony by Ms. Pliha. Therefore, we affirm the conclusion that the June 2009 IEP offered a FAPE.

### E.  Reimbursement

A parent or guardian is "entitled to reimbursement only if a federal court concludes both (1) that the public placement violated the IDEA, and (2) that the private school placement was proper under the Act." *Cty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996) (citing *Florence Cty. Sch. Dist. 4 v. Carter*, 510 U.S. 7 (1993)). "If both criteria are satisfied, the district court must then exercise its 'broad discretion' and weigh 'equitable considerations' to determine whether, and how much, reimbursement is appropriate." *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159 (9th Cir. 2011) (quoting *Carter*, 510 U.S. at 15–16).

Because we affirm the district court's conclusion that the public placement offer in the June 2009 IEP did not violate the IDEA, it was proper for the ALJ and the district court to deny reimbursement.

## II.  June 2011 IEP

### A.  Procedural Violations

Before the ALJ, Guardian presented a laundry list of violations of the IDEA that Garden Grove allegedly committed with regard to the June 2011 IEP. ALJ Ruff

carefully walked through each alleged violation, and concluded that none was meritorious. On appeal, Guardian only asserts two arguments: that Garden Grove failed to assess Carlos for anxiety, and that "[n]o baselines were determined" for Carlos's speech and language goals.

As for the anxiety assessment, the ALJ noted that at the June 2011 IEP meeting, "[t]he team discussed Student's anxiety, but did not propose an IEP goal related to anxiety for Student." The IEP meeting notes reflect that "Guardian stated that Pliha knows how to handle [Carlos] and his anxiety," and that Carlos managed his anxiety by "tak[ing] deep breaths and is also on medication." The school psychologist, Dr. Keller, testified that although he "noticed that Student was intense about wanting to perform well," he would not "characterize that conduct as anxiety." Based on that information, Garden Grove "did not believe anxiety was a significant area of need for Student as of the June 2011 IEP meeting."

The IDEA does not require the school district to conduct all assessments possible; it requires school districts to decide what data is needed to determine "the educational needs of the child," among other things. 20 U.S.C. § 1414(c)(1)(B). By Guardian's own admission at the IEP meeting, an assessment of Carlos's anxiety would not have significantly changed the educational plan in the IEP, because Carlos's anxiety was being effectively managed by medication and breathing exercises.

As to Carlos's speech and language goals, the contention before the agency (toward which Guardian only gestures in her brief on appeal) was that Garden Grove did not have enough specific information to create a baseline for Carlos in

order to build an appropriate goal. The ALJ noted that "a goal generally requires a baseline," but in this case, Carlos was assessed by Ms. Pliha in his one-on-one setting. Both the school district and Ms. Pliha could not gather the specific data necessary to build a baseline in this context, because in order to do so the district needed to observe Carlos's "conduct while engaged with peers." ALJ Ruff concluded that "under these highly unusual circumstances in which a pupil was kept out of a classroom environment for approximately four years," the school district created an IEP plan that was as concrete as possible with the available data. And, like the June 2009 IEP, the June 2011 IEP provided for a 30-day review period, during which the school district could re-evaluate its plans for Carlos after observing him in the Buena Park placement while engaged with peers. If Guardian had accepted the Buena Park placement, the school district would have been given the opportunity to create a more concrete goal for Carlos's speech and language needs.

## B. FAPE

The Buena Park placement offer was a FAPE in the LRE for Carlos, despite the fact that he would not have been placed in a general education setting with typical peers. Again, Ms. Pliha testified that Carlos would not benefit from a general education setting; both Ms. Pliha and Garden Grove representatives expressed concern that Carlos would have a difficult time transitioning directly from an individualized setting to a large classroom. Therefore, Garden Grove's proposed compromise—a small classroom setting at Buena Park—represented a reasonable compromise to help Carlos transition to a larger classroom. This conclusion is consistent with the result of the fully and finally litigated dispute over the 2010–2011 school year. The Myers-Cregar decision,

which was upheld by the Second Selna Decision and our court, ruled that Buena Park was a FAPE for Carlos in 2010 for the express reason that Carlos would have a difficult time transitioning into a general education classroom after individualized education. This logic is even stronger when applied to the June 2011 IEP, after Carlos had been individually educated for yet another school year.

### C.  Reimbursement

Because we hold that the June 2011 IEP does not violate the IDEA, Guardian is not entitled to reimbursement for Carlos's private educational expenses during that school year. *Cty. of San Diego*, 93 F.3d at 1466.[4]

### CONCLUSION

Because Garden Grove did not violate the IDEA in either the June 2009 IEP or June 2011 IEP, the judgment of the district court is **AFFIRMED.**

---

[4] The district court properly excluded transcripts of the June 2009 IEP meeting. ALJ Ruff listened to a recording of the entire meeting, and Guardian has not shown that she was prejudiced by the exclusion of the transcripts.