NOT FOR PUBLICATION

FILED

JUL 18 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| EDMONDS SCHOOL DISTRICT, | No. 17-35985 |
| Plaintiff-Appellant, | D.C. No. 2:16-cv-01500-RSL |
| v. | |
| A. T., a minor child; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted May 13, 2019
Seattle, Washington

Before: KLEINFELD and FRIEDLAND, Circuit Judges, and EZRA,** District
Judge.

Plaintiff-Appellant Edmonds School District ("the District") appeals the

district court's affirmance of the administrative hearing officer's order requiring

the District to reimburse Defendants-Appellants A.T.'s parents ("Parents") under

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

the Individuals with Disabilities Education Act ("IDEA") for the cost of A.T.'s attending a private residential treatment facility, Provo Canyon School, after Parents unilaterally removed A.T. from the District. We affirm.

We employ a two-prong test to determine whether a parent or guardian may obtain reimbursement for the costs of private school placement, asking whether (1) the public placement offered by the school district violated the IDEA, and (2) the private school placement was "proper" under the Act. *Ashland Sch. Dist. v. Parents of Student E.H.*, 587 F.3d 1175, 1183 (9th Cir. 2009). The district court's equitable decision to order reimbursement is reviewed for abuse of discretion, *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1084 (9th Cir. 2008), and its findings of fact are reviewed for clear error, *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1310 (9th Cir. 1987). We also ensure that the district court gave the administrative hearing officer's factual findings "due weight," affording particular deference if those findings are "thorough and careful." *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891-92 (9th Cir. 1995). The district court correctly recognized that the findings in the hearing officer's 57-page decision awarding reimbursement, entered after a six-day hearing in which fifteen witnesses testified, warranted substantial deference here.

As to whether the placement offered by the District violated the IDEA, the District has not seriously contended that A.T.'s individualized education plan

("IEP"), which included his educational placement, was "reasonably calculated to enable [him] to make progress appropriate in light of the child's circumstances," as required by the IDEA, *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017). Over the course of the two years leading up to A.T.'s enrollment at Provo, A.T.'s grades dropped dramatically, and he received more than twenty formal disciplinary offenses at school, including two emergency expulsions that were later converted to long-term suspensions. Nevertheless, the District did not formally re-evaluate A.T., and his IEP essentially remained the same. Most importantly, the District never offered A.T. a residential placement, despite the fact that, as the hearing officer and then district court later reasonably concluded, residential treatment was clearly necessary for A.T. to function in a school setting.

The District suggests that A.T.'s truancy rendered him unable to take advantage of the offered educational opportunities, thereby excusing its failure to offer a reasonably calculated IEP. We are skeptical that this could be a valid excuse in any case, but, even if it could be, it is not a valid excuse here. Before A.T. fully stopped attending school, the District had almost two years of A.T.'s performance at school on which to base a new educational plan, as well as a report with an entirely new mental health diagnosis for A.T. The District has also failed to explain why, if locating A.T. for evaluation was truly so important to updating

3

the IEP, it did not attempt to reevaluate him one of the many times that he was incarcerated at the local juvenile facility or hospitalized. As such, the District cannot credibly argue that A.T.'s IEP, and the offered public placement included in that plan, satisfied the IDEA, so the first requirement for reimbursement is met.

The District primarily challenges the second requirement for reimbursement, contending that Provo was not a "proper placement" under the IDEA. To be "proper," the residential placement must have been (1) "necessary for [the student] to receive benefit from her education," *Seattle Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1500 (9th Cir. 1996), *abrogated in part on other grounds by Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-58 (2005), and (2) for educational purposes, rather than "a response to medical, social, or emotional problems . . . quite apart from the learning process," *Ashland Sch. Dist. v. Parents of Student R.J.*, 588 F.3d 1004, 1010 (9th Cir. 2009) (quoting *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 643 (9th Cir. 1990)). Both the necessity and purpose of a residential placement are factual findings subject to clear error review. *See Seattle Sch. Dist.*, 82 F.3d at 1499 (holding that "the district court's factual determination that a student is incapable of deriving educational benefit outside of a residential placement is reviewed for clear error"); *Parents of Student E.H.*, 587 F.3d at 1185 (explaining that "the purposes underlying [the student's] placement is a question of fact" that we review for clear error). The hearing officer and district

4

court both concluded that, dating to at least the time of his enrollment, A.T. required a residential placement to obtain an educational benefit and that Provo was an appropriate placement under the IDEA.

The District focuses on the purpose of the placement, contending that A.T.'s mental health had deteriorated to such a significant degree that he could only benefit from serious *medical* intervention, so any placement must be understood as a medical one, and asserting that Provo is predominantly a medical placement. We disagree. Students who require residential placement to obtain an educational benefit are often experiencing some acute health crisis at the time they are placed—the severity of their condition is precisely why they need residential treatment. If we adopted the District's approach, it is difficult to imagine how any private residential placement would be reimbursable under the IDEA.[1]

Furthermore, we believe that under the factors identified in *Clovis*, 903 F.2d

---

[1] The District attempts to restrict permissible residential placements in another way, arguing that Provo is an improper placement because it is "illegal" under Washington law. The District has cited no applicable authority for the proposition that a locked educational facility is "illegal" under state law as an IDEA placement. Indeed, 34 C.F.R. § 300.104 specifically authorizes residential placements without referencing the need for the facility to be "unlocked" or to a court order justifying the placement. And the Washington Office of the Superintendent of Public Instruction's website lists private schools approved for the delivery of special education, a list that the District does not dispute includes at least one lock-down residential placement. Without any support for the District's argument that the cited state statutes even apply to students placed in residential treatment facilities for their education, we do not agree that the district court placed an illegal burden on the District in requiring it to pay for Provo.

at 645-46, the district court did not clearly err in concluding that Provo is an educational, rather than a medical, placement. Provo is an accredited educational institution that has a full school day with regular classroom settings and testing; its instructors are Provo employees and most are certified as special education teachers. A.T. participates in daily group therapy sessions, but they last only forty minutes, far less than the six hours per day of intensive psychotherapy that the child in *Clovis* received. *Id.* at 645. Thus, almost every *Clovis* factor weighs in favor of concluding that Provo is an educational placement.[2]

Finally, the District's challenge to the provisions in the administrative

---

[2] The District's other two arguments why Provo was not a proper placement—that Provo failed to implement A.T.'s IEP and was not the "least restrictive environment"—are unpersuasive. First, Provo did not need to adopt an outdated IEP that had not been updated to address A.T.'s most recent diagnosis of prodromal schizophrenia and that A.T.'s examining physician, Dr. Cecchet, described as "wildly inappropriate." In any event, we do not require parents to "show that a private placement furnishes every special service necessary to maximize their child's potential" to qualify for reimbursement—they need only show that the "placement provides educational instruction specially designed to meet the unique needs of a handicapped child." *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159 (9th Cir. 2011) (emphasis omitted) (quoting *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 365 (2d. Cir. 2006)). Parents satisfied that burden here. Second, even assuming that private residential placements such as Provo must be the "least restrictive environment" to be a proper educational placement, the District has not explained what less restrictive environment would have been appropriate for A.T. *See Seattle Sch. Dist.*, 82 F.3d at 1501 (rejecting a school district's argument that a less restrictive placement should have been attempted before placing the student in a residential facility because the District failed to show that the residential placement was unnecessary). Accordingly, the district court did not abuse its discretion in concluding that Provo was a proper placement and that Parents were therefore entitled to reimbursement.

hearing officer's order delegating the authority to determine future placements to Dr. Cecchet was mooted by the District's decision to appeal, because at that point the "stay-put rule" was what kept A.T. at Provo, not anything about Dr. Cecchet. The stay-put rule allows a student to remain "in their current educational placement" throughout the pendency of a judicial proceeding and appeal, unless the parents agree to a change in placement. *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009). Once the hearing officer issued her decision, Provo became A.T.'s "current educational placement" for purposes of stay-put rights, *see Clovis*, 903 F.3d at 641, and the District was therefore required to reimburse the Parents for the costs of Provo once it appealed the hearing officer's decision. The District has offered no evidence that it offered a proper public placement prior to initiating the appeal and attempted to have A.T. transferred there, so it has not shown that Dr. Cecchet's authority to determine A.T.'s placement under the allegedly improper provisions was relevant before the District filed its appeal either. Because the District has not shown the provisions had or have any effect, we need not address their propriety.

**AFFIRMED.**[3]

---

[3] The District filed a supplemental brief arguing that if we reversed the district court's decision on the merits, we should also reverse the court's award of attorney's fees. Because we affirm on the merits, we reject the District's argument.

7