**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 26 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| IRVINE UNIFIED SCHOOL DISTRICT, | No. 21-55290 |
| Plaintiff-Appellant, | 21-55663 |
| | 21-55882 |
| v. | |
| | D.C. No. |
| | 8:20-cv-01001-DOC-JDE |
| SHARON LANDERS; JOSEPH GAGLIANO, Parents on behalf of A.G., a minor, | |
| | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted December 11, 2023
Pasadena, California

Before: GRABER, CHRISTEN, and OWENS, Circuit Judges.

Irvine Unified School District ("Irvine") appeals from the district court's

judgment affirming the Office of Administrative Hearings' ("OAH") determination

that Irvine did not provide A.G. ("Student") with a Free Appropriate Public

Education ("FAPE") in individualized education programs ("IEPs") offered from

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

October 2016 through June 2018 under the Individuals with Disabilities Education Act ("IDEA").  Irvine also appeals from the district court's orders awarding attorneys' fees to Student.  As the parties are familiar with the facts, we do not recount them here.  We affirm.

We review de novo whether a school district provided a FAPE.  *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001).  However, we give "due weight" to the OAH's decision, *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982), and defer to its findings when "they are thorough and careful," *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994).  We review attorneys' fees awards for abuse of discretion, reviewing legal analysis de novo and factual findings for clear error.  *P.N. v. Seattle Sch. Dist., No. 1*, 474 F.3d 1165, 1168 (9th Cir. 2007).

1.  We defer to the OAH's findings because, as the district court found, its decision was "thorough and careful." *Union Sch. Dist.*, 15 F.3d at 1524.  The OAH decision spanned seventy-five pages, made 240 detailed factual findings concerning the many IEP iterations Irvine offered, and individually evaluated sixty-eight issues and sub-issues.  *See Meridian Joint Sch. Dist. No. 2 v. D.A.*, 792 F.3d 1054, 1059–60 (9th Cir. 2015) (deferring to a hearing officer's nineteen-page memorandum disposition).

Irvine contends that we should not defer to the OAH because it did not allow

2

Irvine to present additional evidence on remand of the certified nonpublic school's curriculum and "made a fundamental error in concluding that [the certified nonpublic school] offers a high school diploma for which Student was on track to obtain." Neither argument is persuasive. First, Irvine sought to present evidence of the certified nonpublic school's "current educational program" in December 2019; such evidence would have been irrelevant to the OAH decision, which concerned the school's curriculum for the 2018–2019 school year. Second, the OAH decision did not turn on whether Student would receive a diploma from the certified nonpublic school. Rather, it focused on whether Student was on track to receive a diploma, as an indication of Student's curriculum.

2. We affirm the OAH's award of reimbursement to Student. "A parent or guardian is 'entitled to reimbursement only if a federal court concludes both (1) that the public placement violated the IDEA, and (2) that the private school placement was proper under the Act.'" *Baquerizo v. Garden Grove Unified Sch. Dist.*, 826 F.3d 1179, 1188 (9th Cir. 2016) (citation omitted). Under the IDEA, an IEP must provide a "meaningful benefit" to the student. *N.B. v. Hellgate Elem. Sch. Dist., ex rel. Bd. of Dirs.*, 541 F.3d 1202, 1212–13 (9th Cir. 2008) (citation omitted). Moving a student from the general education curriculum to a modified curriculum is a last resort. 20 U.S.C. § 1400(c)(5)(A). A certified nonpublic school placement is proper if it "provides educational instruction specially

3

designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit a child to benefit from instruction." *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159 (9th Cir. 2011) (citation omitted).

The OAH properly concluded that Irvine violated the IDEA by denying Student a FAPE. Both expert psychologists credibly testified that Student's cognitive level was high enough to participate in the general curriculum with her non-disabled peers. *See Capistrano Unified Sch. Dist. v. S.W.*, 21 F.4th 1125, 1133–34 (9th Cir. 2021) (considering expert testimony to determine whether IEP goals were appropriate for the student's unique needs). Despite this, Irvine offered Student below grade-level standards for math and reading. *See Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1058 (9th Cir. 2012) ("[A]n IEP developed for a second grader is not reasonably calculated to ensure educational benefits to that student in his third grade year."). This modified curriculum offered by Irvine was not focused on progressing Student from grade to grade. *See Endrew F. ex rel. Joseph F. v. Douglas Sch. Dist.*, 580 U.S. 386, 401 (2017) ("[A] FAPE will involve integration in the regular classroom and individualized special education calculated to achieve advancement from grade to grade."). Irvine in one instance responded to Student's parents' concerns by stating that Student "did not make as much progress on grade-level standards because she worked on below grade-level,

4

modified curriculum" and advised that Student's parents should "watch her progress by looking at specific goal areas, not by looking at grade-level standards." Student did not progress in Irvine's modified curriculum; her assessment scores in math and reading dropped following the modifications. *See id.* at 399 ("The IEP must aim to enable the child to make progress.").

Irvine contends that its modifications to Student's curriculum were justified based on her performance in its 2018 assessments. But the Irvine staff member who conducted the assessments and Irvine's lead psychologist conceded that its 2018 Woodcock-Johnson test returned an inaccurate intelligence quotient. *See Anchorage Sch. Dist.*, 689 F.3d at 1058 (finding an IEP was invalid because it "did not provide an accurate assessment of [the student]'s present level of performance"). Irvine thus presented no reliable evidence that the modified curriculum it offered Student in its IEPs meaningfully benefited her.

Irvine also contends that Student's repeating the sixth grade at the certified nonpublic school constituted the same kind of modification it offered her, so her progress at the certified nonpublic school shows that she would have progressed in Irvine's curriculum. But, as the OAH observed, the curricula are distinct; Irvine's did not focus on allowing Student access to the general education curriculum and the "educational standards that apply to nondisabled children," whereas the certified nonpublic school's did.

Finally, Irvine argues that the OAH used the wrong definition of "modified curriculum" in its decision and should have been held to the definition purportedly "established by" the district court when it remanded the case. But there is no fixed definition of "modified curriculum." *See, e.g.*, *D.R. ex rel. R.R. v. Redondo Beach Unified Sch. Dist.*, 56 F.4th 636, 642 (9th Cir. 2022) (using the phrase "modified general education curriculum" to describe supplementary aids and services). Further, the district court did not establish a definition of "modified curriculum" that the OAH was required to apply. The district court based its definition on Student's expert's testimony to identify an inconsistency in the OAH's original decision. The district court plainly stated that it was "not equipped" to determine whether the certified nonpublic school's curriculum was "modified." The OAH accordingly expanded its analysis to resolve this inconsistency, using a definition of "modified curriculum" that the evidence before it supported.

The OAH also properly concluded that the certified nonpublic school placement was proper. Student progressed academically and socially at the certified nonpublic school. Though Student repeated sixth grade, Student's expert credibly testified that it was a necessary intervention to allow her to catch up to her peers after her dip in progress at Irvine.

3. Last, we affirm the district court's attorneys' fees awards to Student. The district court has discretion under the IDEA to award "reasonable attorneys' fees

. . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). Generally, we defer to the district's court award. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). Under the "lodestar method," the district court (1) calculates the lodestar amount by "determining how many hours were reasonably expended on the litigation, and then multiply[ing] those hours by the prevailing local rate for an attorney of the skill required to perform the litigation," *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008), and (2) adjusts the lodestar according to several factors, the most important of which is the "degree of success," *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). *See also Aguirre v. L.A. Unified Sch. Dist.*, 461 F.3d 1114, 1121 (9th Cir. 2006) (holding that IDEA attorneys' fees awards are governed by the standards of *Hensley*).

Irvine contends that the district court abused its discretion by not considering the "degree of success" factor in the fees awards because Irvine "prevailed on 50 sub-issues out of the 68 sub-issues." But the gravamen of Student's complaint was that Irvine did not provide her with a FAPE; Student won nine out of eleven issues on this point and reimbursement of the full amount she sought. *See Vargas v. Howell*, 949 F.3d 1188, 1195 (9th Cir. 2020) (reasoning that a low level of success meriting a fee reduction could be demonstrated by a large disparity between the amount sought and the amount earned); *Compton Unified Sch. Dist. v. Addison*,

598 F.3d 1181, 1185 (9th Cir. 2010) ("[A] district court may award 'full fees even where a party did not prevail on every contention.'" (citation omitted)).

Irvine's contention that the district court erred in setting attorney rates in both fee awards is similarly unpersuasive. The district court properly set the rates when it identified the relevant community and explained how it arrived at the prevailing hourly rate. *See Camacho*, 523 F.3d at 979 (holding that the district court abused its discretion by not identifying the relevant community or explaining the prevailing hourly rate).

Irvine also argues that the district court lacked jurisdiction to consider Student's second attorneys' fees motion. But the district court properly determined that the issues in the appeal (the attorneys' fees from the beginning of the litigation to the appeal) differed from the issue in Student's second motion for attorneys' fees (the attorneys' fees from the previous fees motion). *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam) (holding that a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal").

**AFFIRMED.**